**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
        lrosen@rosenlegal.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TROY KEHOE, Individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| v. | <u>JURY TRIAL DEMANDED</u> |
| 3D SYSTEMS CORP., VYOMESH I. JOSHI, TODD A. BOOTH, JEFFREY A. GRAVES, WAYNE PENSKY, JAGTAR NARULA, | <u>CLASS ACTION</u> |
| Defendants. | |

Plaintiff Troy Kehoe ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the defendants' public documents, and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding 3D Systems Corp. ("3D Systems" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff

believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all persons and entities who purchased the publicly traded securities of 3D Systems from May 6, 2020 to March 1, 2021 (the "Class Period"). Plaintiff seeks to recover compensable damages caused by Defendants' violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.      Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the alleged misstatements entered and subsequent damages took place within this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased 3D Systems' securities during the Class Period and was economically damaged thereby.

7.     Defendant 3D Systems provides comprehensive 3D printing and digital manufacturing solutions, including 3D printers for plastics and metals, materials, software, on-demand manufacturing services, and digital design tools. 3D Systems is headquartered at 333 Three D Systems Circle, Rock Hill, SC 29730. 3D Systems securities traded on the New York Stock Exchange ("NYSE") under ticker symbol "DDD" during the Class Period.

8.     Defendant Vyomesh I. Joshi ("Joshi") was the Chief Executive Officer ("CEO") of 3D Systems from the start of the Class Period to May 26, 2020.

9.     Defendant Todd A. Booth ("Booth") was the Chief Financial Officer ("CFO") of 3D Systems from the start of the Class Period to June 2020.

10.     Defendant Jeffrey A. Graves ("Graves") was the CEO of 3D Systems from May 26, 2020 and at all relevant times thereafter.

11.     Defendant Wayne Pensky ("Pensky") was the interim CFO of 3D Systems from June 2020 to September 14, 2020.

12.     Defendant Jagtar Narula ("Narula") was the CFO of 3D Systems from September 14, 2020 and at all relevant times thereafter.

13.     Defendants Joshi, Booth, Graves, Pensky and Narula are sometimes referred to herein as the "Individual Defendants."

14.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

3

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

15.     The Company is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

16.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

17.     The Company and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS
## Materially False and Misleading Statements

18.     On May 6, 2020, after markets closed, 3D Systems filed a 10-Q quarterly report for the quarterly period ended March 31, 2020 ("1Q 2020 10-Q"). Attached to the 1Q 2020 10-Q were certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Joshi and Booth attesting to the accuracy of financial reporting, the disclosure of any material changes

4

to the Company's internal control over financial reporting and the disclosure of all fraud. In relevant part, the 1Q 2020 10-Q stated:

> **Item 4. Controls and Procedures.**
> _Evaluation of disclosure controls and procedures_
> **As of March 31, 2020, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures** (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) pursuant to Rules 13a-15 and 15d-15 under the Exchange Act. These controls and procedures were designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, in a manner to allow timely decisions regarding required disclosures. **Based on this evaluation, management has concluded that our disclosure controls and procedures were effective as of March 31, 2020.**
>
> **Changes in Internal Controls over Financial Reporting**
> There were **no material changes in our internal controls over financial reporting** during the period covered by this Form 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.
>
> (Emphasis added).

19.     On August 5, 2020, after markets closed, 3D Systems filed a 10-Q quarterly report for the quarterly period ended June 30, 2020 ("2Q 2020 10-Q"). Attached to the 2Q 2020 10-Q were SOX certifications signed by Defendants Graves and Pensky attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. The 2Q 2020 10-Q stated, in pertinent part:

> **Item 4. Controls and Procedures.**
> _Evaluation of disclosure controls and procedures_
> **As of June 30, 2020, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and interim Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures** (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) pursuant to Rules 13a-15 and 15d-15 under the Exchange Act.

These controls and procedures were designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to our management, including our Chief Executive Officer and interim Chief Financial Officer, in a manner to allow timely decisions regarding required disclosures. ***Based on this evaluation, management has concluded that our disclosure controls and procedures were effective as of June 30, 2020.***

**Changes in Internal Controls over Financial Reporting**
There were ***no material changes in our internal controls over financial reporting*** during the period covered by this Form 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

20.     On November 5, 2020, after markets closed, 3D Systems filed a 10-Q quarterly report for the quarterly period ended September 30, 2020 ("3Q 2020 10-Q"). Attached to the 3Q 2020 10-Q were SOX certifications signed by Defendants Graves and Narula attesting to the accuracy of financial reporting, the disclosure of any material changes to the Company's internal control over financial reporting and the disclosure of all fraud. In pertinent part, he 3Q 2020 10-Q stated:

**Item 4. Controls and Procedures.**
*Evaluation of disclosure controls and procedures*
***As of September 30, 2020, we carried out an evaluation, under the supervision and with the participation of our management, including our Chief Executive Officer and Chief Financial Officer, of the effectiveness of the design and operation of our disclosure controls and procedures*** (as defined in Rules 13a-15(e) and 15d-15(e) of the Securities Exchange Act of 1934, as amended (the "Exchange Act")) pursuant to Rules 13a-15 and 15d-15 under the Exchange Act. These controls and procedures were designed to provide reasonable assurance that the information required to be disclosed in the reports that we file or submit under the Exchange Act is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms and that such information is accumulated and communicated to our management, including our Chief Executive Officer and Chief Financial Officer, in a manner to allow timely decisions regarding required disclosures. ***Based on this evaluation, management has concluded that our disclosure controls and procedures were effective as of September 30, 2020.***

**Changes in Internal Controls over Financial Reporting**

There were ***no material changes in our internal controls over financial reporting*** during the period covered by this Form 10-Q that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting.

(Emphasis added.)

21.    The statements referenced in ¶¶18-20 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) 3D Systems lacked proper internal controls over financial reporting; and (2) as a result, 3D Systems' public statements were materially false and/or misleading at all relevant times.

## **The Truth Emerges**

22.    On March 1, 2021, the Company issued a press release announcing a delay of filing their 10-K annual report for the fiscal year ended December 31, 2020. In pertinent part, the press release stated:

3D Systems Corporation (NYSE:DDD) announced today that it will ***delay filing its Annual Report on Form 10-K for the fiscal year ended December 31, 2020.*** The company will file a Form 12b-25, Notification of Late Filing, with the Securities and Exchange Commission, which extends the deadline to file the Form 10-K. The company confirms its plans to hold a fourth quarter and full year 2020 conference call on Tuesday, March 2, 2021.

***The company noted the delay in filing is primarily related to the presentation of cash flows associated with the divestiture process for its Cimatron and GibbsCam software businesses.*** Based on preliminary analysis, the company believes that any financial impact resulting from this review is accounted for within its fourth quarter and full year 2020 results presented below. The delayed filing has no impact on the operations of the company's business. 3D Systems CEO, Dr. Jeff Graves commented "While we were greatly disappointed that we were not able to conclude the audit in a timely fashion, we are pleased to provide our preliminary financial results for the fourth quarter and full year 2020, and look forward to discussing

these results and our progress in positioning 3D Systems for sustained profitable growth on our conference call tomorrow."

*       *       *

***In the course of preparing its financial results for the fourth quarter and full year 2020, the company discovered certain internal control deficiencies.  As a result, the company will report material weaknesses in internal controls in its fiscal 2020 Annual Report on Form 10-K.***  As of the date of this release, there have been no material misstatements identified in prior year financial statements as a result of these deficiencies, and the company expects to file its 2020 Annual Report on Form 10-K no later than March 16, 2021. Please refer to the upcoming 2020 Annual Report on Form 10-K for more information.

(Emphasis added.)

23.     On March 2, 2021, 3D Systems filed a NT-10-K with the SEC, stating that their 10-K filing would be delayed for the reasons listed in their March 1, 2021 press release.

24.     On this news, 3D Systems's stock price fell $7.62 per share, or more than 19.6%, from closing at $38.79 per share on March 1, 2021 to close at $31.17 per share on March 2, 2021, damaging investors.

25.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

26.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased the publicly traded securities of 3D Systems during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families

and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

27.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

28.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

29.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

30.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a)     whether Defendants' acts as alleged violated the federal securities laws;

    (b)     whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

(c)   whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)   whether the Individual Defendants caused the Company to issue false and misleading SEC filings and public statements during the Class Period;

(e)   whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings and public statements during the Class Period;

(f)   whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(g)   whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

31.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

32.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

(a)   Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(b)   the omissions and misrepresentations were material;

(c)   the Company's securities are traded in efficient markets;

(d)     the Company's securities were liquid and traded with moderate to heavy volume during the Class Period;

(e)     the Company traded on the NYSE, and was covered by multiple analysts;

(f)     the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; Plaintiff and members of the Class purchased and/or sold the Company's securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts; and

(g)     Unexpected material news about the Company was rapidly reflected in and incorporated into the Company's stock price during the Class Period.

33.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

34.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

<u>**COUNT I**</u>
**Violation of Section 10(b) of The Exchange Act and Rule 10b-5**
**Against All Defendants**

35.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

36.     This Count is asserted against the Company and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

37.     During the Class Period, the Company and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

38.     The Company and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they: employed devices, schemes and artifices to defraud; made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

39.     The Company and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

40.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other personnel of the Company to members of the investing public, including Plaintiff and the Class.

41.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

42.     Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company's and the Individual Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

43.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

44.     By reason of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to

the Plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchases of the Company's securities during the Class Period.

## COUNT II
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

45.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

46.     During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

47.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

48.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of the Company's securities.

49.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, the Company to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

50.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: April 9, 2021                          Respectfully submitted,

                                              **THE ROSEN LAW FIRM, P.A.**

                                              By: /s/ Phillip Kim

15

Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Ave., 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com


*Counsel for Plaintiff*