UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
TROY KEHOE,

                            Plaintiff,

-against-                                  **MEMORANDUM AND ORDER**
                                                            21-CV-1920 (NGG) (TAM)
3D SYSTEMS CORP., VYOMESH I.                21-CV-2383 (NGG) (TAM)
JOSHI, TODD A. BOOTH, JEFFREY A.
GRAVES, WAYNE PENSKY, and
JAGTAR NARULA,

                            Defendants.
-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

       On April 9, 2021, Plaintiff Troy Kehoe ("Kehoe") initiated this putative class action, *Kehoe v. 3D Systems Corp., et al.* ("*3D Systems I*"), on behalf of investors who purchased publicly traded securities of 3D Systems Corporation ("3D Systems") from May 6, 2020 to March 1, 2021. (*See* April 9, 2021 Complaint ("*3D I* Compl."), ECF No. 1, ¶ 1.)[1] The *3D Systems I* Complaint alleges violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5, by 3D Systems, its Chief Executive Officer ("CEO") Vyomesh I. Joshi ("Joshi") and his successor, Jeffrey A. Graves ("Graves"), as well as its Chief Financial Officer ("CFO") Todd A. Booth ("Booth") and his successors, Wayne Pensky ("Pensky") and Jagtar Narula ("Narula"). (*3D I* Compl. ¶¶ 2, 7–12.) In a separate putative class action commenced on April 29, 2021 and captioned *Kumar v. 3D Systems Corporation, et al.* ("*3D Systems II*"), Plaintiff Ramesh Kumar ("Kumar") alleges the same

---

[1] Some of the submissions referenced herein were docketed in both the above-captioned case and *Kumar v. 3D Systems Corporation, et al.*, 21-CV-2383. Unless otherwise noted, citations in this memorandum refer to the first-docketed case, *Kehoe v. 3D Systems Corp., et al.*, 21-CV-1920.

Exchange Act violations on the part of the same corporate and individual defendants for a class period spanning from May 7, 2020 to March 1, 2021. (*See* April 29, 2021 Complaint in 21-CV-2383 ("*3D II* Compl."), ECF No. 1, ¶¶ 1–2, 7–12.)

Currently pending before this Court is an unopposed motion for consolidation of the above-captioned cases, as well as for the appointment of lead plaintiff and approval of lead counsel, filed on June 8, 2021 by movant Darrell E. Cline. (*See* Darrell E. Cline Mot. to Consolidate ("Cline Motion"), ECF No. 22.) Five other motions for consolidation, appointment of lead plaintiff, and approval of lead counsel were filed the same day by Vito D'Amelio ("D'Amelio"), Michael J. Vickers ("Vickers"), Yi-an Chen ("Chen"), Eduardo Cabanayan ("Cabanayan"), and Ramesh Kumar ("Kumar"). (*See* ECF Nos. 14, 17, 20, 23, 29.) On June 14, 2021 and June 21, 2021, respectively, Vickers and Chen moved to withdraw their motions. (*See* ECF Nos. 33, 35.) On June 21, 2021 and June 22, 2021, respectively, Cabanayan, D'Amelio, and Kumar filed notices of non-opposition to the competing lead plaintiff motions. (*See* ECF Nos. 36, 38, 39.)[2]

On June 17, 2021, the Honorable Nicholas G. Garaufis entered an order referring the movants' motions to the undersigned Magistrate Judge for a report and recommendation (*see* June 17, 2021 Order), followed by a referral for decision, which was entered on July 13, 2021 (*see* July 13, 2021 Order).[3] For the reasons that follow, this

---

[2] On June 22, 2021, Defendants filed a response to the competing motions to consolidate stating that they "take no position as to which Movant should be appointed Lead Plaintiff," and seeking to "reserve their right to raise all arguments concerning Rule 23's requirements." (Defendants' Response to Competing Motions ("Defs.' Resp."), ECF No. 37, at 2.)

[3] On June 17, 2021 and July 13, 2021, Judge Garaufis entered separate orders in *3D Systems II*, referring to the undersigned Magistrate Judge a motion made by Cabanayan to consolidate, appoint lead plaintiff, and appoint lead counsel, which is identical to the motion Cabanayan filed in *3D Systems I*. (*See* Cabanayan Mot. to Consolidate in 21-CV-2383, ECF No. 16; June 17, 2021 Order in *3D Systems II*, 21-CV-2383; July 13, 2021 Order in *3D Systems II*, 21-CV-2383.)

2

Court grants the Cline Motion. (Cline Motion, ECF No. 22.) The above-captioned cases are hereby consolidated, Darrell E. Cline is appointed as lead plaintiff, and his choice of counsel, The Rosen Law Firm, P.A., is appointed as lead counsel.[4]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

3D Systems is a 3D printing and digital manufacturing company that produces "3D printers for plastics and metals, materials, software, on-demand manufacturing services, and digital design tools." (*3D I* Compl. ¶ 7; *3D II* Compl. ¶ 7.) 3D Systems securities were traded during the relevant period on the New York Stock Exchange under the ticker symbol "DDD." (*Id.*) Defendant Joshi served as 3D Systems' CEO during the class period until May 26, 2020, and Defendant Graves served as CEO for the remainder of the relevant period. (*3D I* Compl. ¶¶ 8, 10; *3D II* Compl. ¶¶ 8, 10.) Defendant Booth served as 3D Systems' CFO during the class period until June 2020, and was then succeeded by Defendant Pensky from June 2020 until September 14, 2020, and by Defendant Narula from September 14, 2020 for the remainder of the relevant period. (*3D I* Compl. ¶¶ 9, 11–12; *3D II* Compl. ¶¶ 9, 11–12.)

Both Complaints allege that Defendants made false or misleading statements and material omissions to the public through several documents filed with the Securities and Exchange Commission ("SEC"), leading to the fall of 3D Systems' stock price, which caused investors to suffer losses. (*3D I* Compl. ¶¶ 21–25; *3D II* Compl. ¶¶ 21–25.) Specifically, on May 6, 2020, August 5, 2020, and November 5, 2020, 3D Systems filed 10-Q reports for the quarterly periods ending on March 31, 2020, June 30, 2020, and

---

[4] As Magistrate Judge Mann recently observed: "An order appointing lead plaintiff and approving lead counsel qualifies as a nondispositive matter under Rule 72(a) of the Federal Rules of Civil Procedure, allowing this Court to issue a written order (i.e., a Memorandum and Order) rather than a recommended disposition (i.e., a Report and Recommendation)." *Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917 (ENV) (RLM), 2021 WL 1026567, at *1 n.3 (E.D.N.Y. Mar. 17, 2021) (citing Fed. R. Civ. P. 72(a)) (collecting cases).

September 30, 2020, respectively, attesting to the effectiveness of the company's internal controls over financial reporting. (*3D I* Compl. ¶¶ 18–20; *3D II* Compl. ¶¶ 18–20.)[5] On March 1, 2021, 3D Systems issued a press release stating that their Form 10-K annual report for the fiscal year ending on December 31, 2020 would be delayed. (*3D I* Compl. ¶ 22; *3D II* Compl. ¶ 22.) The press release noted, *inter alia*, that "[i]n the course of preparing its financial results for the fourth quarter and full year 2020, the company discovered certain internal control deficiencies. As a result, the company will report material weaknesses in internal controls in its fiscal 2020 Annual Report on Form 10-K." (*Id.*) The next day, on March 2, 2021, 3D Systems filed a Form NT-10-K with the SEC stating that their 10-K filing would be delayed for the reasons disclosed on March 1, 2021. (*3D I* Compl. ¶ 23; *3D II* Compl. ¶ 23.) Between March 1, 2021 and the close of the market on March 2, 2021, 3D Systems' stock price fell $7.62 per share, from $38.79 per share to $31.17 per share, or approximately 19.6 percent. (*3D I* Compl. ¶ 24; *3D II* Compl. ¶ 24.)

As a result, both Complaints allege that the named Plaintiffs and other putative class members suffered significant losses. (*3D I* Compl. ¶ 25; *3D II* Compl. ¶ 25.) Each Complaint asserts two causes of action: one for violations of Section 10(b) of the Exchange Act and Rule 10b-5 against 3D Systems, Joshi, Booth, Graves, Pensky, and Narula; and one for violations of Section 20(a) of the Exchange Act against Joshi, Booth, Graves, Pensky, and Narula. (*3D I* Compl. ¶¶ 35–50; *3D II* Compl. ¶ 35–50.) Additionally, the Complaints seek damages sustained by class members, interest, and

---

[5] The May 6, 2020 quarterly statement included certifications pursuant to the Sarbanes-Oxley Act of 2002 signed by Defendants Joshi and Booth. (*3D I* Compl. ¶ 18; *3D II* Compl. ¶ 18.) The August 5, 2020 quarterly statement included certifications signed by Defendants Graves and Pensky. (*Id.* ¶ 19; *Id.* ¶ 19.) The November 5, 2020 quarterly statement included certifications signed Defendants Graves and Narula. (*Id.* ¶ 20; *Id.* ¶ 20.)

4

costs and fees associated with the actions. (*See 3D I* Compl. Prayer for Relief; *3D II* Compl. Prayer for Relief.)

On June 8, 2021, six movants filed motions asking the Court to consolidate *3D Systems I* and *3D Systems II*, to appoint them as lead plaintiff, and to approve their choice of class counsel. As stated above, two of these motions were withdrawn (*see* ECF Nos. 33, 35), and three were supplemented by notices of non-opposition (*see* ECF Nos. 36, 38, 39). Accordingly, the remaining unopposed motion is the Cline Motion. (*See* Cline Motion, ECF No. 22; *see also* June 23, 2021 Notice by Darrell E. Cline, ECF No. 40.)

## DISCUSSION

I. Consolidation

Federal Rule of Civil Procedure 42 permits courts to consolidate actions that "involve a common question of law or fact" or issue "any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "Consolidation is a valuable and important tool of judicial administration that should be invoked to expedite trial and eliminate unnecessary repetition and confusion." *Rauch v. Vale S.A.*, 378 F. Supp. 3d 198, 204 (E.D.N.Y. 2019) (internal quotation marks and citation omitted). In evaluating whether consolidation is appropriate, district courts must consider:

> "'[W]hether the specific risks of prejudice and possible confusion [are] overborne by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense to all concerned of the single-trial, multiple trial alternatives.'"

*Darish v. N. Dynasty Mins. Ltd.*, No. 20-CV-5917 (ENV) (RLM), 2021 WL 1026567, at *4 (E.D.N.Y. Mar. 17, 2021) (alterations in original) (quoting *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 343 (E.D.N.Y. 2018)).

Here, there are common questions of law and fact. Indeed, the two complaints are virtually identical. *See, e.g.*, *Crumrine v. Vivint Solar, Inc.*, No. 19-CV-5777 (FB) (JO), 2020 WL 1332111, at *1 (E.D.N.Y. Mar. 23, 2020) (consolidating actions where the complaints "allege the same claims against the same defendants, on behalf of the same putative class"). Though the class period alleged in *3D Systems II* begins one day after the period in *3D Systems I*, there is near-total overlap of the substantive factual allegations and legal claims. *See Rauch*, 378 F. Supp. 3d at 205 (granting motion for consolidation where one class period started two years earlier, finding that "the same pattern of alleged misconduct [was] present over both class periods"). Additionally, Defendants agree that the cases should be consolidated (*see* Defs.' Resp., ECF No. 37, at 2), and there is no suggestion that consolidation will prejudice any party. Accordingly, the two actions will be consolidated into a single case. *See Atanasio v. Tenaris S.A.*, 331 F.R.D. 21, 25 (E.D.N.Y. 2019) (finding it "appropriate to consolidate" where complaints were "nearly identical" and no defendant risked prejudice).

II. <u>Lead Plaintiff</u>

Pursuant to the Private Securities Litigation Reform Act of 1995 ("the PSLRA"), courts are directed to "appoint the most adequate plaintiff as lead plaintiff" in securities actions "[a]s soon as practicable" after consolidation. 15 U.S.C. § 78u-4(a)(3)(B)(ii); *see also Darish*, 2021 WL 1026567, at *4 (citing *Constance Sczesny Tr. v. KPMG LLP*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004)). The "most adequate plaintiff" is defined as "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i).

6

A. <u>Notice to Class</u>

As a threshold matter, the PSLRA requires a plaintiff who files a complaint to publish "a notice advising members of the purported plaintiff class [] of the pendency of the action, the claims asserted therein, and the purported class period," and notifying them that "any member of the purported class may move the court to serve as lead plaintiff of the purported class" within 60 days. 15 U.S.C. § 78u-4(a)(3)(A)(i); *see also Atanasio*, 331 F.R.D. at 25–26. Additionally, such notice must be published "in a widely circulated national business-oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i).

On April 9, 2021, The Rosen Law Firm, P.A., counsel for Kehoe and Cline, published a notice about the pendency of the action in *Business Wire*, informing potential class members of their right to move for appointment of lead plaintiff within 60 days. (*See* PSLRA Early Notice, attached as Ex. 1 to Mem. in Supp. of Cline Motion ("Cline Mem."), ECF No. 26-1); *see also Rauch*, 378 F. Supp. 3d at 206 ("'*Business Wire* is a suitable vehicle for meeting the [PSLRA's] statutory requirement that notice be published.'" (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 403 (S.D.N.Y. 2004))). All six movants timely filed on June 8, 2021, the last day of the 60-day period, and no party has objected to the adequacy of the notice. The procedural requirements of the PSLRA have therefore been satisfied. *See Constance Sczesny Tr.*, 223 F.R.D. at 323.

B. <u>Appointment of Lead Plaintiff</u>

"Even when a motion to appoint lead plaintiff is unopposed, the Court must still consider the factors under the PSLRA to ensure that the movant is the most adequate plaintiff." *Chitturi v. Kingold Jewelry, Inc.*, No. 20-CV-2886 (LDH) (SJB), 2020 WL 8225336, at *4 (E.D.N.Y. Dec. 22, 2020) (citing *Nurlybaev v. ZTO Express (Cayman) Inc.*,

7

No. 17-CV-6130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017)). The PSLRA prescribes a two-step process for determining the most adequate plaintiff. First, there is a presumption that the most adequate plaintiff is:

> [T]he person or group of persons that--
>
> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(A)(3)(b)(iii)(I); *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 111–12 (E.D.N.Y. 2012).

Once a presumptive lead plaintiff has been established, the Court must next determine "whether that presumption has been sufficiently 'rebutted' by a member of the purported plaintiff class." *Darish*, 2021 WL 1026567, at *5 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). Such presumption may be rebutted "only upon proof . . . that the presumptively most adequate plaintiff [] will not fairly and adequately protect the interests of the class; or [] is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Because Cline made a timely motion to be appointed as lead plaintiff, the Court now turns to the two remaining elements of the presumption of adequacy.

1. *Largest Financial Interest*

To determine which plaintiff has the largest financial interest, courts in this circuit look to the four "*Olsten* factors." *See, e.g., Darish*, 2021 WL 1026567, at *5 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)); *Chitturi*, 2020 WL 8225336, at *4 (same). These four factors are:

> "'(1) the total number of shares purchased during the class period; (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period); (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate losses suffered.'"

*Rauch*, 378 F. Supp. 3d at 208 (quoting *In re Gentiva Sec. Litig.*, 281 F.R.D. at 112). Courts in this district recognize that the fourth factor, the approximate financial loss, should be afforded special weight. *See, e.g.*, *Atanasio*, 331 F.R.D. at 26 (citing *Baughman v. Pall Corp.*, 250 F.R.D. 121, 125 (E.D.N.Y. 2008)).

As the other five movants in this case have acknowledged, either by withdrawing their motions (*see* ECF Nos. 33, 35), or by filing notices of non-opposition (*see* ECF Nos. 36, 38, 39), Cline has the largest financial interest in the litigation based on the record before the Court. Cline purchased 4,000 shares of 3D Systems stock during the class period for $55.00 per share, totaling $220,000. (*See* Cline Loss Chart, attached as Ex. 3 to Cline Mem., ECF No. 26-3.) Cline retained all of these shares during the class period, making the number of "net shares" purchased 4,000, and the "net funds expended" $220,000. (*See id.*) As a consequence of the fall in 3D Systems' stock price, Cline claims $121,251.60 in losses. (*See id.*)[6]

Therefore, under the *Olsten* factors, Cline has the largest financial interest.

---

[6] By comparison, movant D'Amelio retained 3,900 shares and claimed a loss of $88,551.00 (*see* D'Amelio Loss Chart, attached as Ex. B to Decl. of Shannon L. Hopkins, ECF No. 16-2); movant Vickers retained zero shares and claimed a loss of $42,791.90 (*see* Vickers Loss Chart, attached as Ex. C to Decl. of Gregory B. Linkh, ECF No. 19-3); movant Chen retained 3,000 shares and claimed a loss of $87,820 (*see* Chen Loss Chart, attached as Ex. 2 to Decl. of Marion C. Passmore, ECF No. 24-2); movant Cabanayan retained 15,000 shares and claimed a loss of $72,995.27 (*see* Cabanayan Loss Chart, attached as Ex. C to Decl. of Ira M. Press, ECF No. 27-3); and movant Kumar retained 200 shares and claimed a loss of $4,649 (*see* Kumar Loss Chart, attached as Ex. A to Decl. of Jeremy A. Lieberman, ECF No. 31-1.)

2. *Rule 23*

Pursuant to the PSLRA, the next step for identifying a lead plaintiff is determining whether such plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Although Rule 23(a) identifies numerosity, commonality, typicality, and adequacy as the four relevant factors for class certification, plaintiffs under the PSLRA "need only make a 'preliminary, prima facie showing' that the typicality and adequacy requirements would be met." *Brady*, 324 F. Supp. 3d at 350 (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008)).

"'Typicality is satisfied where the claims arise from the same course of events and each class member makes similar legal arguments to prove defendant's liability.'" *Rauch*, 378 F. Supp. 3d at 210 (quoting *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 (DRH) (JO), 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006)). Here, Cline's claims are based on the same alleged false or misleading statements and omissions attributed to Defendants during the same period as the other potential class members' claims. Furthermore, the legal arguments that will be made by Cline under the various provisions of the Exchange Act are the same as those that would be made by the other class members. Thus, Cline has demonstrated typicality under Rule 23(a).

Adequacy, on the other hand, "turns on whether that plaintiff 'will fairly and adequately protect the interests of the class.'" *Chitturi*, 2020 WL 8225336, at *5 (quoting *Constance Sczesny Tr.*, 223 F.R.D. at 324). For a lead plaintiff to satisfy this requirement of Rule 23,

> (1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; and
> (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation. Additionally, the lead plaintiff should have a sufficient interest in the outcome to ensure vigorous advocacy.

10

*In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) (internal quotation marks and citation omitted).

No party has raised, nor is the Court aware of, any conflict between Cline's interests and the interests of the class. In addition, Cline has retained experienced counsel in The Rosen Law Firm, P.A., which "has acted as lead or co-lead counsel in several securities class actions cases in federal court, including in this District." *Chitturi*, 2020 WL 8225336, at *6. (*See also* The Rosen Law Firm, P.A. Biography ("Rosen Law Biography"), attached as Ex. 4 to Cline Mem., ECF No. 26-4.) Finally, due to Cline's financial stake in this litigation, the Court is assured that as lead plaintiff, Cline will "have a sufficient interest in the outcome to ensure vigorous advocacy." *In re Fuwei Films Sec. Litig.*, 247 F.R.D. at 436. Accordingly, Cline has preliminarily satisfied Rule 23's adequacy requirement. *Cf. In re Patriot Nat'l, Inc. Sec. Litig.*, 828 F. App'x 760, 764–65 (2d Cir. 2020) (summary order).

### 3. *Rebuttal of Presumption*

The presumption that Cline is the most adequate plaintiff as defined by the PSLRA "may be rebutted only upon proof" that Cline "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render [Cline] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Rauch*, 378 F. Supp. 3d at 211. As discussed above, the Court finds that Cline will fairly and adequately protect the interests of the class. Moreover, there is no indication that Cline is subject to any unique defenses. Therefore, the Court hereby appoints Cline as lead plaintiff in this consolidated action. *See Atanasio*, 331 F.R.D. at 31 (citing *In re Gentiva*, 281 F.R.D. at 121).

11

III. <u>Lead Counsel</u>

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). While the statute does not provide instruction regarding such approval, "the PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention." *Brady*, 324 F. Supp. 3d at 352 (internal quotation marks and citations omitted). As stated above, Cline has retained The Rosen Law Firm, P.A. (*see* Cline Certification and Authorization of Named Plaintiff, attached as Ex. 2 to Cline Mem., ECF No. 26-2), a law firm that has served as lead counsel in similar litigation in this and other districts. *See Chitturi*, 2020 WL 8225336, at *6; (Rosen Law Biography, ECF No. 26-4). Indeed, the firm's biography demonstrates extensive experience handling securities actions.

The Court therefore approves of Cline's selection of The Rosen Law Firm, P.A. to serve as lead counsel. *See, e.g.*, *Darish*, 2021 WL 1026567, at *8 (approving the lead plaintiff's selection of lead counsel where the firm had "substantial experience litigating securities fraud class actions").

## CONCLUSION

For the reasons set forth above, and pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, *Kehoe v. 3D Systems Corp., et al.*, case No. 21-CV-1920, and *Kumar v. 3D Systems Corporation, et al.*, case No. 21-CV-2383, are hereby consolidated as *In re 3D Systems Securities Litigation*. All relevant documents and submissions shall be maintained as one file under Master File No. 21-CV-1920. Any other securities class actions filed in, or transferred to, this District related to the facts alleged in the cases described above shall be consolidated into this action.

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), the Court appoints Darrell E. Cline as lead plaintiff and appoints The Rosen Law Firm, P.A. as lead counsel. The motions by Vickers, Chen, Cabanayan, D'Amelio, and Kumar are denied as moot in light of their respective withdrawals and notices of non-opposition.

**SO ORDERED.**

Dated: Brooklyn, New York
July 13, 2021

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE