**THE ROSEN LAW FIRM, P.A.**
Phillip Kim
Robin Bronzaft Howald
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
Email: rhowald@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE 3D SYSTEMS SECURITIES LITIGATION | CASE No.: 1:21-cv-01920-NGG-TAM |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND <u>ESTABLISHING NOTICE PROCEDURES</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................................... 1

II. SUMMARY OF THE LITIGATION AND THE SETTLEMENT ...................................... 2

III. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ........................... 2

   A. Numerosity.......................................................................................................... 3

   B. Commonality....................................................................................................... 3

   C. Typicality ........................................................................................................... 4

   D. Adequacy ........................................................................................................... 5

      1. Adequacy of the Proposed Class Representatives ........................................... 5

      2. Rule 23(g) Adequacy of the Proposed Class Counsel ...................................... 5

   E. Common Questions Predominate and a Class Action Is Superior to Other Methods of Adjudication.................................................................................................... 6

IV. THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED .......... 8

   A. Standards for Preliminary Approval .................................................................... 8

   B. A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair ................................................................................................................... 10

   C. The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and Remaining Grinnell Factors ...................................................................... 10

      1. Plaintiffs and Their Counsel Have Adequately Represented the Class ........................ 11

      2. The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel.................................................................... 11

      3. The Proposed Settlement is a Highly Favorable Result for the Class in Light of the Settlement's Benefits and the Risks of Continued Litigation....................................... 12

         a) The Complexity, Expense, and Likely Duration of the Litigation ............................ 13

         b) The Risk of Establishing Classwide Liability and Damages .................................... 14

4.  The Proposed Method for Distributing Relief Is Effective ........................................... 15

5.  Attorneys' Fees and Reimbursement of Expenses ........................................................ 15

6.  The Parties Have Agreed to a Supplemental Agreement Regarding Opt-Outs ............. 16

7.  There Was No Preferential Treatment; The Plan Is Designed to Treat Settlement Class Members Equitably ....................................................................................................... 16

8.  The Remaining Grinnell Factors Support Preliminary Approval ................................. 17

V.   THE PROPOSED NOTICE SATISFIES FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS ............................................................................................................................. 19

VI.  PROPOSED SCHEDULE OF EVENTS .......................................................................... 21

VII. CONCLUSION ................................................................................................................ 21

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ackerman v. Coca-Cola Co.*,
   No. 09 CV 395 (DLI) (RML), 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ........................... 7

*Amchem Products, Inc., v. Windsor*,
   521 U.S. 591 (1997) ................................................................................................... 3, 7

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ..................................................................................... 6

*Cagan v. Anchor Sav. Bank FSB*,
   No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................... 13

*Carson v. Am. Brands, Inc.*,
   450 U.S. 79 (1981) ........................................................................................................... 8

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ........................................................................................... 3

*Christine Asia Co., Ltd. v. Yun Ma*,
   No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y., 2019) ............................ 9, 16

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ...................................................................................... 9, 12

*Consol. Edison, Inc. v. Ne. Utilities*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ......................................................................... 19

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995) ............................................................................................. 3

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ........................................................................................... 11

*Espinoza v. 953 Assocs. LLC*,
   280 F.R.D. 113 (S.D.N.Y. 2011) ................................................................................... 7

*Fogarazzao v. Lehman Bros.*,
   232 F.R.D. 176 (S.D.N.Y. 2005) ................................................................................... 6

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ..................................................................................................... 14

*In re "Agent Orange" Prod.* Liab. Litig.,
   597 F. Supp. 740 (E.D.N.Y. 1984)......................................................................... 18

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ........................................................................... 20

*In re Akazoo S.A. Sec. Litig.*,
   No. 1:20-CV-01900-BMC, 2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ............................ 15

*In re Akazoo S.A. Sec. Litig.*,
   No. 1:20-CV-01900-BMC, 2021 WL 8945767 (E.D.N.Y. Apr. 28, 2021) .............................. 20

*In re Akazoo S.A. Sec. Litig.*,
   No. 1:20-cv-01900-BMC, 2022 WL 14915876 (E.D.N.Y. Oct. 7, 2022) ............................... 20

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001)..................................................................... 17

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-CV-04846-NGG-PK, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) .............................. 20

*In re China Med. Corp. Sec. Litig.*,
   No. 8:11-1061 JLS (ANx), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................. 12

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................... 16

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2010 WL 2653354 (E.D.N.Y. June 24, 2010)...................... 13

*In re Drexel Burnham Lambert Grp., Inc.*,
   960 F.2d 285 (2d Cir. 1992)................................................................................... 5

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ......................... *passim*

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
   312 F.R.D. 332 (S.D.N.Y. 2015) ........................................................................... 4

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   No. 02-CV-3400 (CM) (PED), 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)......................... 19

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................... 4, 18

iv

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 8, 17, 19

*In re Initial Pub. Offering Sec. Litig.*,
    243 F.R.D. 79 (S.D.N.Y. 2007)................................................................................ 10

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................ 12

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
    No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .......................... 4, 8, 18

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010)...................................................................... 18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................ 9

*In re Pfizer Inc. Sec. Litig.*,
    282 F.R.D. 38 (S.D.N.Y. 2012)................................................................................. 4

*In re Platinum & Palladium Commodities Litig.*,
    No. 10 cv 3617, 2014 WL 3500655 (S.D.N.Y. July 15, 2014)................................................. 10

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006)................................................................................. 5

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) .............................................................................. 3

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002)......................................................................... 4

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)................................................................................... 4

*Karvaly v. eBay, Inc.*,
    245 F.R.D. 71 (E.D.N.Y. 2007) ............................................................................... 3

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
    No. CV 0:15-2393-MGL, 2017 WL 4297450 (D.S.C. Sept. 28, 2017).................................... 14

*Kristal v. Mesoblast Ltd.*,
    No. 7:20-CV-08430-PMH, 2022 WL 3442535 (S.D.N.Y. Aug. 15, 2022) .............................. 15

*Lea v. Tal Educ. Grp.*,
   No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ........................... 10, 16

*Leung v. Home Boy Rest. Inc.*,
   No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ......................... 11

*Marisol A. by Forbes v. Giuliani*,
   929 F. Supp. 662 (S.D.N.Y. 1996) ........................................................................................... 4

*Mikhlin v. Oasmia Pharmaceuticals AB, et al.*,
   No. 1:19-cv-04349-NGG-RER, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ........................... 6

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012) ..................................................................................... 13

*Newman v. Stein*,
   464 F.2d 689 (2d Cir. 1972) .................................................................................................... 18

*Palacio v. E\*TRADE Fin. Corp.*,
   No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419 (S.D.N.Y. June 22, 2012) ............................ 8

*Pasini v. Fishs Eddy, LLC*,
   No. 1:16-CV-00354-PGG, 2018 WL 6843905 (S.D.N.Y. Nov. 15, 2018) ............................... 16

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) .................................................................................................................. 8

*Seijas v. Republic of Argentina*,
   606 F.3d 53 (2d Cir. 2010) ........................................................................................................ 7

*Vargas v. Cap. One Fin. Advisors*,
   559 F. App'x 22 (2d Cir. 2014) ............................................................................................... 19

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................................. 4

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .................................................................................................. 8, 11

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) ........................................................................................................ 2

*West Palm Beach Police Pension Fund v. DFC Global Grp.*,
   No. 13-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017) .................................................... 12

**Statutes**

15 U.S.C. § 78j(b) &78t(a) ........................................................................................ 2, 14

15 U.S.C. § 78u-4(a)(7)(A)-(F)........................................................................................ 19

**Rules**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

**Other Authorities**

7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986).... 7

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff Darrell E. Cline and Plaintiffs Troy Kehoe, Alfonzo Woods, Osiel Herrera Martinez, and Diane Van Alstyne ("Plaintiffs") respectfully submit this memorandum in support of their Unopposed Motion for Preliminary Approval of the Class Action Settlement.

## I.    INTRODUCTION

Plaintiffs and 3D Systems Corporation ("3DSC" or the "Company"), Jeffrey A. Graves, Jagtar Narula, Wayne Pensky, Vyomesh I. Joshi, and Todd A. Booth ("Defendants" and, with Plaintiffs, the "Parties"), have agreed to settle this putative class action for $4,000,000 by the terms stated in the Stipulation of Settlement, dated December 16, 2022 ("Stipulation"), filed herewith. By this motion, Plaintiffs respectfully request the Court enter an order: (1) preliminarily certifying the Settlement Class;[1] (2) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (3) approving the form and method for providing notice of the Settlement; and (4) scheduling the Settlement Fairness Hearing at which the Court will consider the request for final approval of the Settlement, the Plan of Allocation (the "Plan") of Settlement proceeds, the request for attorneys' fees, expenses and compensatory awards, and entry of the final judgment.

The Settlement was achieved after substantial arm's-length negotiations with the aid of Jed Melnick, Esq., an experienced JAMS mediator. This settlement provides an immediate and guaranteed recovery for the Settlement Class, a highly favorable result in light of obstacles that Plaintiffs face in pleading and proving their claims. Plaintiffs believe that the proposed Settlement is fair, reasonable, and adequate, and is in the Settlement Class's best interest. As required, the proposed content and manner of providing notice satisfies Fed. R. Civ. P. 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

---

[1] Unless otherwise stated, capitalized terms have the same meaning as specified in the Stipulation.

1

## II.   SUMMARY OF THE LITIGATION AND THE SETTLEMENT

On April 9, 2021, Mr. Kehoe filed a putative securities fraud class action complaint against Defendants, alleging claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), styled as *Kehoe v. 3D Systems Corp., et al.,* Case No. 1:21-cv-01920-NGG-LB (E.D.N.Y.) On April 29, 2021, the related action, *Kumar v. 3D Systems Corp., et al.*, Case No. 1:21-cv-02383-ENV-LB, was filed alleging the same claims against the same Defendants.

On June 8, 2021, Dr. Cline filed one of five motions to consolidate the related actions and to be appointed lead plaintiff; because he had the largest financial interest, the other movants did not oppose his motion. Magistrate Judge Taryn A. Merkl consolidated the actions and appointed Dr. Cline as Lead Plaintiff, and The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel.

On September 13, 2021, Plaintiffs filed the operative Amended Class Action Complaint for the Violation of the Federal Securities Laws ("Complaint"). On October 4, 2021, Defendants filed a request for a pre-motion conference and Plaintiffs filed their response on October 19, 2021. On January 7, 2022, the Court held a pre-motion conference and set a briefing schedule for Defendants' motion to dismiss. On February 15, 2022, Defendants served their motion. Plaintiffs served their opposition on April 15, 2022. Defendants served their reply in further support of their motion on May 16, 2022, and filed the fully briefed motion with the Court.

On August 18, 2022, the Parties sought to stay all proceedings to allow them to pursue a resolution through mediation. On October 12, 2022, following the submission of written position statements, the Parties participated in an in-person, all-day mediation. After engaging in a vigorous exchange of views, the Parties were able to agree upon the terms of the proposed settlement.

## III.   THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED

The Second Circuit has long acknowledged the propriety of certifying a class solely for settlement purposes. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Although the trial

2

court may disregard management issues in certifying a settlement class, the proposed class must still satisfy the other requirements of Rule 23. *Amchem Products, Inc., v. Windsor*, 521 U.S. 591, 620 (1997). Specifically, to preliminarily certify a settlement class, the Court must determine whether the threshold requirements of Rule 23(a) and 23(b)(3) are met: numerosity; commonality; typicality; adequacy of representation; and predominance and superiority. *Id*. at 613-15. The Court need not conduct a rigorous analysis to certify a settlement class, reserving such scrutiny for final approval. *Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007). The proposed Settlement Class readily meets the standard for preliminary certification.

### A.   Numerosity

Rule 23(a)(1) requires a class be so large that joinder of all members is "impracticable" *i.e.*, "that the difficulty or inconvenience of joining all members of the class make the use of the class action appropriate." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 244-45 (2d Cir. 2007). Indeed, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Although the exact size of the Settlement Class is not yet known, numerosity is generally satisfied in a securities class action as "a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010); *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, *12 (S.D.N.Y. July 27, 2007). Here, there are hundreds if not thousands of potential Settlement Class Members as 3DSC common stock publicly traded on the NYSE during the Class Period.

### B.   Commonality

The commonality requirement, which "is applied permissively," asks only whether there are "questions of law or fact common to the class." *EVCI*, 2007 WL 2230177, at *13. All that is required is that "named plaintiffs share at least one question of fact or law with the grievances of

the prospective class." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 451 (S.D.N.Y. 2004). To be a common issue, the shared question must be "capable of classwide resolution—which means that [determination of] its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (*quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

Securities fraud cases easily satisfy this standard where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions," *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012), such as those appearing in a company's public filings and statements. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015). Here, the common issues are whether material false statements or omissions were made, with the requisite state of mind, and the proper measure of damages therefor.

### C.      Typicality

Rule 23(a)(3)'s typicality requirement asks whether "the claims of the named plaintiffs arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Marisol A. by Forbes v. Giuliani*, 929 F. Supp. 662, 691 (S.D.N.Y. 1996), *aff'd sub nom. Marisol A. v. Giuliani*, 126 F.3d 372 (2d Cir. 1997). In a securities case, typicality exists where all class members were allegedly harmed by "the distribution of false and misleading information which artificially inflated the stock." *In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002). "Typical," however, does not mean identical, *EVCI*, 2007 WL 2230177, at *13, and differences in the amount of damages claimed, or small variations in the fact patterns of individual claims, do not defeat typicality. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *10 (S.D.N.Y. Dec. 23, 2009) (differences in acquisition dates, type of securities purchased, and manner of acquisition will not destroy typicality "if each class member was the victim of the same material misstatements and the same fraudulent

4

course of conduct").

Plaintiffs alleged a common course of conduct affecting all Settlement Class Members, namely the purchase of 3DSC common stock at prices that were allegedly artificially inflated by Defendants' alleged misrepresentations, and were harmed in the same way when the truth emerged. Plaintiffs' claims stand or fall with those of the Settlement Class and are thus typical.

### D.    Adequacy

Rule 23(a)(4) requires that the representative parties fairly and adequately protect the class's interests. This requirement traditionally entails a two-pronged inquiry: first, the showing that the interests of the representative parties will not conflict with the interests of Settlement Class Members, and second, the representative parties' counsel is qualified, experienced, and able to conduct the litigation vigorously. *See In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *EVCI*, 2007 WL 2230177, at *13. Plaintiffs are adequate if their interests do not conflict with those of the class. Pursuant to Rule 23(g), adequacy of proposed class counsel is now considered separately from the determination of the adequacy of the proposed class representatives. Both prongs of the adequacy requirement are satisfied here.

#### 1.  Adequacy of the Proposed Class Representatives

Plaintiffs' interests are aligned with, not antagonistic to, those of the proposed Settlement Class. Plaintiffs, who purchased 3DSC common stock during the Settlement Class Period at artificially inflated prices, are seeking on their own behalf, and on behalf of all class members, to maximize the recovery of damages from Defendants. *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest…"). Plaintiffs are adequate class representatives.

#### 2.  Rule 23(g) Adequacy of the Proposed Class Counsel

Rule 23(g) requires a court to assess the adequacy of proposed class counsel. To that end,

5

the Court must consider the following: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. *Fogarazzao v. Lehman Bros.*, 232 F.R.D. 176, 182 (S.D.N.Y. 2005). Lead Counsel has extensive experience successfully prosecuting class actions in courts throughout the country, in this District, and before this Court. *See e.g., Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("the Rosen Law Firm is well-qualified to serve as lead counsel in this matter"); *Mikhlin v. Oasmia Pharmaceuticals AB, et al.,* No. 1:19-cv-04349-NGG-RER, 2021 WL 1259559, at *4 (E.D.N.Y. Jan. 6, 2021). The firm and its attorneys have achieved significant results for their clients and for certified investor classes. Thus, courts have consistently found Lead Counsel to be well-suited as class counsel in securities class actions. Lead Counsel's firm resume was previously submitted to the Court as Dkt. No. 26-4.

Lead Counsel spent considerable time on this action for the Settlement Class's benefit including: conducting an exhaustive investigation of 3DSC and the 3-D printing industry; retaining a private investigator and experts in accounting and damages; reviewing 3DSC's public statements including SEC filings, press releases, news articles, and interviews; opposing Defendants' pre-motion conference letter and motion to dismiss; and preparing for and participating in mediation, including drafting a mediation statement. Lead Counsel's significant securities class action experience makes them knowledgeable and capable of evaluating cases to determine when a settlement is beneficial to investors, or when the prudent course would be to continue litigation.

**E.    Common Questions Predominate and a Class Action Is Superior to Other Methods of Adjudication**

After meeting the threshold requirements of Rule 23(a), a plaintiff must establish that the

6

proposed class meets the requirements of Rule 23(b). To certify this Settlement Class, pursuant to Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Plaintiffs satisfy the predominance and superiority criteria.

When common questions are a significant aspect of a case and they can be resolved in a single action, class certification is appropriate. *See* 7A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d*, § 1788, at 528 (1986). Thus, "Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 (DLI) (RML), 2013 WL 7044866, at *18 (E.D.N.Y. July 18, 2013). Because "the focus of the predominance inquiry is on defendants' liability, not on damages," *Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 125 (S.D.N.Y. 2011), "it is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). This case illustrates the principle that the predominance requirement can be "readily met" in securities fraud class actions, *Amchem*, 521 U.S. at 625, because, were each class member to bring an individual action, proof of liability would require every plaintiff to demonstrate the same misstatements were made with scienter.

The superiority inquiry compares class actions to other possible methods of adjudication. Pursuant to Fed. R. Civ. P. 23(b)(3), the factors relevant to a finding of superiority include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Because of the PSLRA's notice, consolidation, and Lead Plaintiff provisions, subsections (B) and (C) have already been resolved, and subsection (D) does not apply to settlements. With

respect to subsection (A), those investors damaged by securities law violations whose losses do not run into several millions of dollars would likely have no practical recourse. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). The "class action is uniquely suited to resolving securities claims," because "the prohibitive cost of instituting individual actions" in such cases gives class members "limited interest in individually controlling the prosecution or defense of separate actions." *Marsh & McLennan*, 2009 WL 5178546, at *12.

Solely for the purposes of settlement, Defendants do not dispute that the Settlement Class should be certified in accordance with Rules 23(a) and 23(b)(3). As such, the Court should conditionally certify the Settlement Class for settlement purposes.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.    Standards for Preliminary Approval

There is a "strong judicial policy favoring settlements, particularly in the class action context," *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012); *Palacio v. E*TRADE Fin. Corp.*, No. 10 CIV. 4030 LAP DCF, 2012 WL 2384419, at *2 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005), because such cases tie up judicial resources, require large expenditures of the parties' time and money, and their resolution is usually significantly delayed. *Palacio*, 2012 WL 2384419, at *3 ("Litigation through trial would be complex, expensive, and long."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *EVCI*, 2007 WL 2230177, at *4. When reviewing a proposed class settlement, courts should "not decide the merits of the case or resolve unsettled legal questions." *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

Where, as here, parties propose to resolve class action litigation through a classwide

8

settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), as amended in 2018, preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

These factors "add to, rather than displace, the *Grinnell* factors"[2] considered by courts within the Second Circuit. *Payment Card,* 330 F.R.D. at 29 (courts "consider[] the Rule 23(e)(2) factors, and then consider[] additional *Grinnell* factors not otherwise addressed"); *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *10 (S.D.N.Y., 2019) ("Rule 23(e)(2)(C)(i) incorporates the factors set out in [*Grinnell*] … and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate."). Under this multi-factor analysis, the Settlement merits preliminary approval.

---

[2] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974)).

**B.    A Settlement Should be Preliminarily Approved if it is Procedurally and Substantively Fair**

In conducting a preliminary approval inquiry, a court considers both the "'negotiating process leading up to the settlement, *i.e.*, procedural fairness, as well as the settlement's substantive terms, *i.e.*, substantive fairness.'" *In re Platinum & Palladium Commodities Litig.*, No. 10 cv 3617, 2014 WL 3500655, at *11 (S.D.N.Y. July 15, 2014). A settlement is procedurally fair when well-informed counsel participate in arm's-length negotiations. *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021). Likewise, a settlement is substantively fair when the relief to the class is adequate after evaluating the Rule 23(e) and *Grinnell* factors. *Id.* at *9. Thus, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007). Here, the Settlement is both procedurally and substantively fair.

**C.    The Settlement is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and Remaining *Grinnell* Factors**

At this stage, courts undertake an initial review of the Rule 23(e) factors to determine whether the Settlement merits preliminary approval such that notice of the terms of the proposed Settlement should be disseminated to the Class. *See* Rule 23(e)(1)(A)-(B). Under Rule 23(e)(2), the Court may finally approve the Settlement "only on finding that it is fair, reasonable, and adequate after considering whether": (a) the Class was adequately represented; (b) the Settlement was negotiated at arm's length; (c) the Class relief is adequate; and (d) the Settlement treats Class Members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)-(D). As the amendments to Rule 23 did not displace the existing *Grinnell* test, it is also appropriate to consider the *Grinnell* factors that are not duplicative of Rule 23(e)(2): the stage of the proceedings and the amount of

10

discovery completed; defendants' ability to withstand a greater judgment; and the range of reasonableness of the settlement in light of the best possible recovery and the risks of litigation.

### 1. Plaintiffs and Their Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have diligently prosecuted this Action on the Settlement Class's behalf. Before filing the Complaint, Plaintiffs and Lead Counsel thoroughly investigated the allegations which included, among other things, an extensive review and analysis of: the development of the 3-D printing industry; 3DSC's 35-year corporate history; five years of SEC filings; 3DSC's public statements, including press releases and transcripts of investor calls; securities and financial analysts reports during the Class Period; and news articles, interviews, and other Class Period commentary and analysis regarding 3DSC. Lead Counsel also consulted with an accounting expert as well as a damages expert. In addition to Lead Counsel's factual investigation, Lead Counsel prepared the initial complaint and the Complaint, opposed Defendants' pre-motion letter and motion to dismiss, and negotiated a favorable settlement that provides immediate, and guaranteed, recovery to Settlement Class Members.

### 2. The Proposed Settlement is the Result of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

A proposed settlement is presumed fair and reasonable when it is the result of "extensive arm's-length negotiations between experienced attorneys and their clients." *Leung v. Home Boy Rest. Inc.*, No. 07 Civ. 8779 (RJS) (DFE), 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009); *Wal-Mart Stores, Inc.*, 396 F.3d at 116. Further, a mediator's involvement in negotiations supports a presumption of fairness and "helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

Having exchanged position statements in advance, the Parties participated in an all-day session under mediator Jed Melnick's oversight. The negotiations were hard-fought, with the

Parties exchanging frank views over the course of many hours. The arm's-length nature of the negotiations and an experienced mediator's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANx), 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) (settlement reached after mediation before Mr. Melnick weighs in favor of approval).

### 3. The Proposed Settlement is a Highly Favorable Result for the Class in Light of the Settlement's Benefits and the Risks of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, along with other relevant factors, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Courts recognize that settlements benefit class members by providing them with an immediate and certain recovery. *See In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006) ("The immediacy and certainty of a recovery is a factor for the court to balance in determining whether the proposed settlement is fair, reasonable, and adequate"). Here, the proposed Settlement provides a cash payment of $4,000,000 for the Settlement Class. This is a favorable result particularly given the significant risks of continued litigation.

The Settlement equates to approximately 1% of the total maximum potential damages calculated by Plaintiffs' expert, an estimated $414.1 million.[3] Because "there is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery," *Grinnell*, 495 F.2d at 455 n.2, for the reasons set forth below, a

---

[3] $414.1 million comprises the potential full residual decline with respect to all four price declines alleged, which has not yet been established in this putative class action. Defendants dispute the maximum damages calculated by Plaintiffs' expert. Moreover, a "complete and total victory" on liability and loss causation for all of the alleged false statements "occurs with the regularity of unicorn sightings." *West Palm Beach Police Pension Fund v. DFC Global Grp.*, No. 13-6731, 2017 WL 4167440 (E.D. Pa. Sept. 20, 2017).

certain recovery of approximately 1% of the "best case" damages recovery is fair and reasonable in light of the significant risks of continued litigation. *See, e.g., Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at \*12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair"). The Settlement falls within the range of possible approval.

### a)    The Complexity, Expense, and Likely Duration of the Litigation

Although securities class actions have long been deemed complex and expensive, they "have become more difficult from a plaintiff's perspective in the wake of the [PSLRA]." *In re Comverse Tech., Inc. Sec. Litig.*, No. 06–CV–1825 (NGG) (RER), 2010 WL 2653354, at \*5 (E.D.N.Y. June 24, 2010). From satisfying the heightened pleading requirements of the PSLRA, to demonstrating the action is worthy of class certification – including proof of market efficiency during the Class Period, to surviving a motion for summary judgment, to proving at trial every element of Plaintiffs' claims as well as having the jury accept Plaintiffs' experts' theory and calculation of damages, the action would take at least several more years to resolve (if no party appealed any adverse ruling along the way).

In addition to the time and effort that prosecuting the case through the many stages of litigation would have required, were the Settlement not reached, the Parties would have incurred substantial costs in advance of trial: discovery costs include document production and hosting fees, as well as percipient and expert depositions; and multiple expert reports could be required for class certification and/or summary judgment. These costs could run to hundreds of thousands of dollars for Plaintiffs alone. Reaching this Settlement now not only guarantees recovery for the Settlement Class, but also reduces overall litigation expenses.

**b)** **The Risk of Establishing Classwide Liability and Damages**

There were substantial risks in this Action and further prosecution may have yielded limited or no recovery. In the pending motion to dismiss, Defendants contested one or more elements were not satisfied with respect to all six alleged misrepresentations that formed the basis of their claims under §§10(b) and 20(a) of the Exchange Act. Specifically, Defendants argued that Plaintiffs failed to establish its scienter for any alleged misrepresentation, and challenged the pleading of falsity, loss causation, standing, and/or materiality for one or more of the alleged misrepresentations. Defendants further sought to cut the ten-month class period to two months. Although Plaintiffs believe they would be successful defeating Defendants' motion to dismiss, the Court could have dismissed the Complaint – with or without leave to amend.

Had the case survived a pleading motion, the first paragraph of Defendants' opening brief in support of its motion to dismiss previewed that class certification would be hotly contested: Defendants' argument that Plaintiffs purchased their shares "in early 2021 after 3D's price jumped nearly 400%," investing "speculatively during a period of unprecedented volatility in 3D's stock price" (Dkt. No. 50-1 at 1), telegraphed that they could challenge that 3DSC shares traded on an efficient market, a requirement for demonstrating the element of reliance could be proved classwide. Even were Plaintiffs to demonstrate that 3DSC shares traded in an efficient market, Defendants would be permitted to rebut the presumption by showing that the misstatements did not impact 3DSC's common stock price. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 281 (2014). While Plaintiffs believe they would have been able to certify a class, as did the plaintiffs in a prior class action which also saw large swings in 3DSC's share price, *see* Complaint at ¶3 and *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. CV 0:15-2393-MGL, 2017 WL 4297450 (D.S.C. Sept. 28, 2017), had the Court ruled otherwise, the Action could have stalled at that stage of the litigation – save for a successful, albeit expensive and time-consuming, Rule 23(f) appeal.

14

Even if a class had been certified, in light of the fact that 3DSC cut 20% of its workforce during the alleged Class Period, Plaintiffs could have had difficulties locating witnesses to provide sufficient evidence to survive summary judgment, particularly on the elements of falsity and scienter. Defendants would have also raised loss causation and damages arguments that could have substantially reduced or even eliminated Plaintiffs' alleged damages. If they survived summary judgment, Plaintiffs would then have to establish each element of their claims and damages to a jury's satisfaction. Any victory at trial would then have to survive an appeal. The Settlement avoids these genuine risks and provides an immediate and guaranteed benefit to the Settlement Class.

### 4. The Proposed Method for Distributing Relief Is Effective

As demonstrated below in Section V, both the method of providing the proposed notice and the claims administration process are effective. The claims process includes a claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the plan of allocation. The Plan of Allocation governs how Settlement Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.

### 5. Attorneys' Fees and Reimbursement of Expenses

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Notice states Lead Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount and recover litigation expenses in an amount not to exceed $50,000. This fee request is in line with other settlements approved in recent cases in this Circuit. *In re Akazoo S.A. Sec. Litig.*, No. 1:20-CV-01900-BMC, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding attorneys' fees of one-third of $4.9 million partial settlement); *Kristal v. Mesoblast Ltd.*, No. 7:20-CV-08430-PMH, 2022 WL 3442535, at *1 (S.D.N.Y. Aug. 15, 2022) (awarding attorneys' fees of one-third of $2 million

settlement); *Lea*, 2021 WL 5578665, at *12 ("percentage of the fund requests – one-third – is a percent that has been approved as reasonable in this Circuit.").

### 6. The Parties Have Agreed to a Supplemental Agreement Regarding Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any other agreements between the Parties. The Parties have agreed to a supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of 3DSC common stock represented by such opt outs equals or exceeds a certain number, 3DSC shall have the option to terminate the Settlement. Stipulation ¶2.12. As is the usual practice in securities class actions, although the supplemental agreement is identified in the Stipulation, the terms are confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia,* 2019 WL 5257534, at *15.

### 7. There Was No Preferential Treatment; The Plan Is Designed to Treat Settlement Class Members Equitably

Rule 23(e)(2)(D) requires courts to evaluate if the settlement treats class members equitably relative to one another. A plan of allocation will be preliminarily approved if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). Here, the Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Settlement Class Member preferentially. *Pasini v. Fishs Eddy, LLC*, No. 1:16-CV-00354-PGG, 2018 WL 6843905, at *2 (S.D.N.Y. Nov. 15, 2018) (approving a class action settlement where "the terms of the Settlement have no obvious deficiencies and do not improperly grant preferential treatment to any individual member of the Settlement Class").

The Plan, set out in the Long Notice, explains how the Settlement proceeds will be

16

distributed among Authorized Claimants. The Plan was designed, with the help of a damages expert, to distribute the Settlement Fund consistent with the claims alleged in this case and loss causation principles. The Plan provides that all Settlement Class Members, including Plaintiffs, will receive a *pro rata* payment pursuant to the same formula.

### 8.   The Remaining *Grinnell* Factors Support Preliminary Approval

*Grinnell* contains several factors that are not coextensive with those in Rule 23(e)(2). These factors, too, support preliminary approval. The second *Grinnell* factor is premature at this time, as notice of the Settlement has not yet been disseminated. Plaintiffs, however, support the Settlement.

*Grinnell* **Factor 3:** The fact that there has been no formal discovery in this case does not weigh against preliminary approval. *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425-26 (S.D.N.Y. 2001) ("To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement.") (quotation marks and citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Prior to settlement, Plaintiffs conducted a thorough and informed investigation. In addition, as Plaintiffs alleged various misstatements in 3DSC's reported financial results, Plaintiffs engaged an accounting expert. Accordingly, Plaintiffs and Lead Counsel entered into the Settlement fully informed about the Action's strengths and weaknesses.

*Grinnell* **Factor 6:** Certifying and maintaining certification through trial is not guaranteed, as the Court may re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class

17

certification, there could be a risk of decertification at a later stage."). Because this risk remains through judgment and appeal, "the uncertainty surrounding class certification supports approval of the Settlement." *Marsh & McLennan*, 2009 WL 5178546, at \*6.

*Grinnell* **Factors 8 and 9:** The reasonableness of a settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd.*, 818 F.2d 145 (2d Cir. 1987). The Court need only determine whether the Settlement falls within a "range of reasonableness" – a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). As explained above, even were the Complaint to survive the motion to dismiss and class certification were to be achieved, at summary judgment, Defendants would continue their efforts to shrink both the Class Period and the number of misrepresentations for which they could be held liable, and to substantially reduce or eliminate recoverable damages with expert testimony denying the existence of loss causation. Prosecution could be further hindered by the significant turnover at 3DSC, requiring Plaintiffs to track down former employees with knowledge of the facts pertinent to proof of liability. Although Plaintiffs and Lead Counsel could possibly obtain a judgment that withstood appeal, a certain recovery now is reasonable, fair and adequate.

Although the Second Circuit directs the Court to consider whether Defendants could withstand a greater judgment, "the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'" *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010). Indeed, a "defendant is not required to 'empty its coffers' before a settlement can be found

18

adequate." *IMAX*, 283 F.R.D. at 191. Here, 3DSC's most-recent filing on Form 10-Q listed cash and short-term investments of approximately \$610 million and shareholder equity of \$734 million;[4] a judgment for \$414 million could have led to the Company's demise. Even if a substantial judgment would not deal a death blow, "the mere ability to withstand a greater judgment does not suggest the settlement is unfair." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 (CM) (PED), 2010 WL 4537550, at *19 (S.D.N.Y. Nov. 8, 2010).

As the Settlement falls within the range of reasonableness, and is fair, reasonable, and adequate to Settlement Class members, it should be preliminarily approved.

## V.   THE PROPOSED NOTICE SATISFIES FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Notice of a potential classwide settlement must meet the requirements of Rule 23, the PSLRA, and due process. Under Rule 23(c)(2)(B), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). Additionally, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27. The requirements of the Rule 23, due process, and the PSLRA are similar. *Compare Vargas, supra, with Consol. Edison, Inc. v. Ne. Utilities*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members 'fairly apprise the ... members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.'"), *with* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

---

[4] Form 10-Q, filed Nov. 9, 2022 at 3. *See* https://www.sec.gov/ix?doc=/Archives/edgar/data/910638/000091063822000046/ddd-20220930.htm#i2e26b70cd49d445e94bd72f089caf6fe_13

The proposed Notice program includes: (a) emailing a copy of the Summary Notice and links to the location of the Long Notice and Claim Form, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by the Claims Administrator[5]; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) disseminating the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily*. Courts have held this multi-pronged approach sufficient to satisfy the notice requirements of Rule 23, the PSLRA, and due process. *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-04846-NGG-PK, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021) (notice included emailed summary notice, mailed postcard notice, disseminating summary notice, and website); *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014).

The Long Notice provides detailed information concerning: (a) the rights of Settlement Class Members, including the manner in which objections could be lodged and requests for exclusions to be submitted; (b) the nature, history, and progress of the Action; (c) the proposed Settlement; (d) the process for filing a Proof of Claim; (e) the proposed Plan of Allocation; and (f) the necessary information for any Settlement Class Member to examine the Court records.

Additionally, pursuant to Fed. R. Civ. P. 23(h)(1) the Notice informs Settlement Class Members that Lead Counsel will apply for attorneys' fees of up to one-third of the Settlement Amount, litigation expenses of up to $50,000, and an award to Plaintiffs of up to $21,500, in total,

---

[5] Plaintiffs requests Strategic Claims Services ("SCS") be appointed the Claims Administrator as SCS has substantial experience administering securities settlements. *See, e.g., In re Akazoo S.A. Sec. Litig.*, No. 1:20-CV-01900-BMC, 2021 WL 8945767, at *2-3 (E.D.N.Y. Apr. 28, 2021) (appointing SCS), and 2022 WL 14915876, at *2 (E.D.N.Y. Oct. 7, 2022) (final judgment approving implementation of notice program).

all to be paid from the Settlement Fund. Accordingly, the Notice and the Notice program satisfy the requirements of the Federal Rules of Civil Procedure, the PSLRA, and due process.[6]

## VI. PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following schedule as set forth in the Preliminary Approval Order:

| Event | Deadline for Compliance |
|---|---|
| Creating Settlement Website | No later than 40 calendar days after the entry of the Preliminary Approval Order (¶15) |
| Emailing Links to the Long Notice and Claim Form, and/or Mailing Postcard Notice | No later than 40 calendar days after the entry of the Preliminary Approval Order (¶17) |
| Publication of the Summary Notice | No later than 40 calendar days after entry of the Preliminary Approval Order (¶16) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for Application of attorneys' fees and expenses. | No later than 35 calendar days before the Settlement Hearing. (¶32) |
| Submission Deadline for Claim Forms. | No later than 28 calendar days before the Settlement Hearing (¶21(a)) |
| Submission Deadline for Requests for Exclusion | No later than 28 calendar days before the Settlement Hearing (¶23) |
| Submission Deadline for Objections | No later than 28 calendar days before the Settlement Hearing (¶29) |
| Date for Plaintiffs to file Reply Papers in Support of the Settlement, the Plan, and for Application of Attorneys' Fees and Expenses. | No later than 7 calendar days before the Settlement Hearing (¶33) |
| Dated for the Settlement Hearing | Approximately 120 days after entry of the Preliminary Approval Order |

## VII. CONCLUSION

For the above-stated reasons, Plaintiffs request that the Court: (1) preliminarily certify the Settlement Class; (2) preliminarily approve the Settlement as set forth in the Stipulation; (3) approve the form and manner of notice; and (4) set a Settlement Fairness Hearing.

---

[6] This closely tracks a model notice published by the Federal Judicial Center. *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*. Available at https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf.

Dated:  December 19, 2022

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Phillip Kim*
Phillip Kim
Robin Bronzaft Howald
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
Email: pkim@rosenlegal.com
         rhowald@rosenlegal.com


*Lead Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on December 19, 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system

*/s/ Phillip Kim*
Phillip Kim

23