UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

IN RE 3D SYSTEMS SECURITIES LITIGATION

**MEMORANDUM & ORDER**
**21-CV-1920 (NGG) (TAM)**

NICHOLAS G. GARAUFIS, United States District Judge.

This is a securities class action against 3D Systems Corporation brought by a putative class of investors in the company's stock. Plaintiffs filed the operative Amended Complaint on September 13, 2021. (Am. Compl. (Dkt. 43).) On December 19, 2022, Plaintiffs filed with the court a copy of a proposed settlement agreement, along with a motion for entry of an order preliminarily approving settlement and establishing notice procedures. (*See* Proposed Settlement Agreement (Dkt. 55); Mot. for Prelim. Settlement Approval (Dkt. 56).) The court referred this motion to Magistrate Judge Taryn A. Merkl on December 22, 2022. (December 22, 2022 Order Referring Mot.) Magistrate Judge Merkl issued the annexed R&R on June 5, 2023, recommending that the court: (1) grant Plaintiffs' motion for preliminary settlement approval; (2) enter the proposed order preliminarily approving the class action settlement; (3) direct the parties to issue notice as proposed; (4) appoint The Rosen Law Firm as class counsel for purposes of settlement; and (5) schedule a final settlement hearing for a specific date, time, and place. (R&R (Dkt. 63).)

No party has objected to Judge Merkl's R&R and the time to do so has passed. *See* Fed. R. Civ. P. 72(b)(2). Therefore, the court reviews this R&R for clear error. *See Rubinstein & Assocs., PLLC v. Entrepreneur Media, Inc.*, 554 F. Supp. 3d 506, 510 (E.D.N.Y.

2021). The court notes only that evenly dividing the $21,500 incentive award five ways results in $4,300 per recipient. (*See* R&R at 16 (calculating this to be $5,375 per recipient).)[1] With the exception of this one minor modification, the court ADOPTS the R&R in full.

Plaintiffs' motion for preliminary settlement approval is thus GRANTED. The court also enters the attached order preliminarily approving a class action settlement, directs the parties to issue notice as outlined in Judge Merkl's R&R, and appoints The Rosen Law firm as class counsel for the purposes of settlement. Lastly, the court schedules a final settlement hearing for November 21, 2023 at 10:00 a.m. in Courtroom 4D South.

SO ORDERED.

Dated:     Brooklyn, New York
           July 18, 2023

                                    s/Nicholas G. Garaufis
                                    NICHOLAS G. GARAUFIS
                                    United States District Judge

---

[1] This calculation in the R&R does actually impact the distribution of the incentive award to Plaintiffs. The size and distribution of the incentive award will be finalized at a later date. Nonetheless, the court notes the correct calculation for the sake of accuracy.

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE 3D SYSTEMS SECURITIES
LITIGATION

**REPORT AND
RECOMMENDATION**
21-CV-1920 (NGG) (TAM)

-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

This is a consolidated, putative class action brought against 3D Systems Corporation; its Chief Executive Officer, Vyomesh I. Joshi, and his successor, Jeffrey A. Graves; and its Chief Financial Officer, Todd A. Booth, and his successors, Wayne Pensky and Jagtar Narula. (*See* Amend. Compl., ECF No. 43, ¶¶ 25–30.) Plaintiffs Darrell Cline, Troy Kehoe, Alfonzo Woods, Osiel Herrera Martinez, and Diane Van Alstyne each purchased 3D Systems common stock between May 6, 2020 and March 5, 2021 (the "Class Period"), and have filed suit on behalf of all similarly situated purchasers. (*Id.* ¶ 1.) Plaintiffs claim monetary harm resulting from Defendants' alleged violations of Sections 10(b) and 20(a) of the Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. (*Id.* ¶¶ 206–21.)

Currently pending before the Court is Plaintiffs' motion for preliminary settlement approval, which the Honorable Nicholas G. Garaufis referred to the undersigned magistrate judge for a report and recommendation. As explained below, the Court respectfully recommends granting Plaintiffs' motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

3D Systems is a 3D printing and digital manufacturing company that "sold 3D printers, materials used for 3D printing, printer software, and on-demand printing services" during the Class Period. (Amend. Compl., ECF No. 43, ¶ 2.) 3D Systems securities were traded during the Class Period on the New York Stock Exchange under the ticker symbol "DDD." (*Id.* ¶ 25.) Joshi served as CEO of the company from April 4, 2016 to May 25, 2020, and was succeeded by Graves, who served as CEO for the remainder of the Class Period. (*Id.* ¶¶ 26, 28.) Booth served as CFO from September 3, 2019 until May 14, 2020, and was succeeded by Pensky, who served until September 13, 2020. (*Id.* ¶¶ 27, 29.) Pensky, in turn, was succeeded by Narula, who served as CFO for the remainder of the Class Period. (*Id.* ¶¶ 29–30.)

Plaintiffs allege that Defendants made false or misleading statements and material omissions in several of the company's public filings issued during the Class Period, which ultimately led to the fall of 3D Systems' stock price and investor losses. (*See generally id.*) Specifically, Plaintiffs point to quarterly reports filed with the SEC on May 6, 2020, August 5, 2020, and November 5, 2020, each attesting to the effectiveness of the company's internal control over financial reporting. (*Id.* ¶¶ 95, 119, 154.) 3D Systems subsequently issued press releases on February 23, 2021, and March 1, 2021, each indicating that the company's annual report for the 2020 fiscal year would be delayed on account of "certain internal control deficiencies." (*Id.* ¶¶ 182, 185.) On March 2, 2021, following the filing of a Form NT 10-K, indicating that 3D Systems could not file

---

[1] The Court recites the facts as alleged in the amended complaint. *See Mikhlin v. Oasmia Pharm. AB*, No. 19-CV-4349 (NGG) (RER), 2021 WL 1259559, at *1 (E.D.N.Y. Jan. 6, 2021). Defendants deny these allegations and dispute liability. (*See* Proposed Settlement Agreement ("Settlement"), ECF No. 55, § I.D; Tr. of May 2, 2023 Fairness Hearing ("Fairness Hearing"), ECF No. 62, at 33:25–34:8.)

its annual report, and an earnings call, 3D Systems' stock price began to fall, dropping 19.6% by market close and another 11.8% the following day. (*Id.* ¶¶ 14–15; 190–91.)

3D Systems ultimately filed its annual report on March 5, 2021, the last day of the Class Period. (*Id.* ¶ 192.) For the first time, 3D Systems disclosed an accounting error that had resulted in an inflated profit margin over the first three quarters of the 2020 fiscal year. (*Id.*) The market responded accordingly. (*See id.* ¶¶ 194–95.)

Plaintiffs filed suit in April 2021, alleging causes of action under Section 10(b) of the Exchange Act and Rule 10b-5 against all Defendants, and Section 20(a) of the Exchange Act against Joshi, Booth, Graves, Pensky, and Narula. (*See id.* at ¶¶ 206–221; *see also* Apr. 9, 2021 Compl., ECF No. 1; Apr. 29, 2021 Compl., Case No. 21-CV-2383 (NGG) (TAM), ECF No. 1.) Specifically, investors filed two separate actions, which the Court consolidated on July 13, 2021, appointing Darrell Cline as lead plaintiff and The Rosen Law Firm as Lead Counsel.[2] (*See generally* Mem. and Order, ECF No. 41.)

Thereafter, Defendants moved to dismiss the action on May 16, 2022. (*See* Letter Mot. for Pre-Mot. Conf., ECF No. 46; Jan. 7, 2022 ECF Minute Entry; Mot. to Dismiss, ECF No. 50.) Defendants argued that Plaintiffs had failed to state a claim to relief and that certain putative class members' claims were barred under the Private Securities Litigation Reform Act (PSLRA). (*See* Mem. in Supp. of Mot. to Dismiss, ECF No. 50-1, at 1–3.)

After fully briefing the motion, the parties requested a stay in order to attempt resolution through mediation. (*See* Letter Mot. to Stay, ECF No. 51; *see also* Opp'n Mem.,

---

[2] The later-filed action, No. 21-CV-2383, was initiated by Ramesh Kumar, whom the Court notes was not named as a plaintiff in the Amended Complaint filed after case consolidation. (*See* Amend. Compl., ECF No. 43.) During the fairness hearing held on May 2, 2023, Plaintiffs' counsel represented that Mr. Kumar still qualifies as a class member for purposes of settlement. (*See* Fairness Hearing, ECF No. 62, at 5:20–6:8.)

ECF No. 50-9; Reply in Supp. of Mot. to Dismiss, ECF No. 50-16.) Judge Garaufis granted the stay, and the parties later filed a status report on October 28, 2022, indicating that they had reached a settlement in principle. (Aug. 22, 2022 ECF Order; Oct. 28, 2022 Status Report, ECF No. 53.)

Plaintiffs filed a copy of their proposed settlement agreement on December 19, 2022, along with a motion for preliminary settlement approval and a proposed order. (*See* Proposed Settlement Agreement ("Settlement"), ECF No. 55; Mot. for Prelim. Settlement Approval, ECF No. 56; Proposed Order ("Preliminary Approval Order"), ECF No. 56-1; Mem. in Supp. of Mot. for Prelim. Settlement Approval ("Supp. Mem."), ECF No. 57.) Per these submissions, the parties "have agreed to settle this putative class action for $4,000,000 by the terms stated in the" proposed settlement agreement. (Supp. Mem., ECF No. 57 at 1.) Plaintiffs represent that the agreement "was achieved after substantial arm's-length negotiations with the aid of Jed Melnick, Esq., an experienced JAMS[3] mediator," whom the parties retained. (*Id.*; *see also* Letter Mot. to Stay, ECF No. 51; Settlement, ECF No. 55, § I.B (stating that the parties "participated in an in-person, all-day mediation" on October 12, 2022).) On December 22, 2022, Judge Garaufis referred Plaintiffs' pending motion to the undersigned magistrate judge "to hold a

---

[3] JAMS, previously known as Judicial Arbitration and Mediation Services, Inc., represents itself to be "the world's largest private alternative dispute resolution (ADR) provider." *About Us*, JAMS, https://www.jamsadr.com/about/ (last visited June 1, 2023). Mr. Melnick represents that he "has resolved over one thousand disputes," *Jed D. Melnick, Esq.*, JAMS, https://www.jamsadr.com/melnick/ (last visited June 1, 2023), and courts in this circuit have observed that Mr. Melnick is "a highly qualified mediator," *Gordon v. Vanda Pharms. Inc.*, No. 19-CV-1108 (FB) (LB), 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022) (quotation marks omitted); *see also Fulton Cnty. Emps.' Ret. Sys. ex rel. Goldman Sachs Grp. Inc. v. Blankfein*, No. 19-CV-1562 (VSB), 2022 WL 4292894, at *3 (S.D.N.Y. Sept. 16, 2022). (*See also* Fairness Hearing, ECF No. 62, at 3:24–4:7 ("The parties wanted to retain a mediator that could bring benefit to the discussion[] [and] understood the complexities of similar cases.").)

fairness hearing under Federal Rule of Civil Procedure 23(e) and for a Report and Recommendation." (Dec. 22, 2022 ECF Referral Order.)

The Court subsequently held a fairness hearing on May 2, 2023. (*See* May 2, 2023 ECF Minute Entry and Order; Tr. of May 2, 2023 Fairness Hearing ("Fairness Hearing"), ECF No. 62.) Lead Counsel represented Plaintiffs at the hearing; counsel for Defendants were also present. (*See* May 2, 2023 ECF Minute Entry and Order; Fairness Hearing, ECF No. 62, at 1.) The parties discussed Plaintiffs' pending motion, including the likelihood of final settlement approval and class certification, as well as the parties' proposed notice procedures. (*See generally* Fairness Hearing, ECF No. 62.) In light of Plaintiffs' representation in their motion papers that, in addition to the proposed settlement agreement, the parties had entered into a "supplemental agreement," the Court directed the parties to submit the supplemental agreement for review under seal. (Supp. Mem., ECF No. 57, at 16; *see* Fairness Hearing, ECF No. 62, at 25:25–26:8.) The Court also expressed a concern regarding the parties' proposed notices — specifically, that certain of the notices did not clearly indicate that class members could appear through their own attorney if desired, as required by Federal Rule of Civil Procedure 23(c)(2)(B)(iv). (*See* Fairness Hearing, ECF No. 62, at 17:1–6, 20:18–22:1.) Accordingly, the Court directed the parties to submit revised notices and took the pending motion under advisement. (*See* May 2, 2023 ECF Minute Entry and Order.)

Plaintiffs filed the parties' supplemental agreement under seal on May 3, 2023. (*See* Stipulation, ECF No. 60.) Plaintiffs also filed a supplemental letter and revised proposed notices. (*See* May 3, 2023 Letter, ECF No. 61; Revised Summary Notice, ECF No. 61-1; Revised Postcard Notice, ECF No. 61-3.)

## DISCUSSION

Plaintiffs "request that the Court: (1) preliminarily certify the Settlement Class; (2) preliminarily approve the Settlement as set forth in the [agreement; and] (3) approve the [proposed] form and manner of notice." (Supp. Mem., ECF No. 57, at 21.) Plaintiffs also request an order appointing Lead Counsel as class counsel for purposes of settlement. (*See* Proposed Order, ECF No. 56-1, ¶ 4; *see also* Supp. Mem., ECF No. 57, at 5–6.)

Under Federal Rule of Civil Procedure 23(e), "[t]he claims, issues, or defenses of a certified class — or a class proposed to be certified for purposes of settlement — may be settled, voluntarily dismissed, or compromised only with the court's approval." "At the preliminary approval stage, a court makes an initial evaluation of fairness prior to notifying the class . . . ." *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *3 (E.D.N.Y. Feb. 11, 2021).

Preliminary approval is guided by a "likelihood standard," i.e., "whether the parties have shown that the court will *likely* be able to grant final approval and certify the class." *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 n.21 (E.D.N.Y. 2019); *see also* Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii). "If the court determines that notice to class members is 'justified by the parties' showing'" as to the likelihood of final approval and class certification, "it 'must direct notice in a reasonable manner to all class members who [would] be bound by the proposal.'" *Rosenfeld*, 2021 WL 508339, at *4 (quoting Fed. R. Civ. P. 23(e)(1)(B)). The court must also appoint class counsel for purposes of settlement. *Payment Card*, 330 F.R.D. at 58.

The Court begins with an analysis of the likelihood of final settlement approval and class certification, then assesses the proposed form and manner of notice, and concludes with appointment of class counsel.

## I. Likelihood of Final Settlement Approval

### A. Legal Principles

In assessing the likelihood of final approval, courts "look[] to the factors contained in the text of Rule 23(e)(2)." *Payment Card*, 330 F.R.D. at 28. Under Rule 23(e)(2) courts must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
> > (i) the costs, risks, and delay of trial and appeal;
> >
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> >
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). "[P]aragraphs (A) and (B) are 'procedural' factors that address 'the conduct of the litigation and of the negotiations leading up to the proposed settlement,' whereas . . . paragraphs (C) and (D) are 'substantive' factors that address the 'relief that the settlement is expected to provide to class members.'" *Rosenfeld*, 2021 WL 508339, at *3 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The substantive factors are supplemented by the nine *Grinnell* factors, which "courts in this Circuit have traditionally considered" when "evaluating the fairness, reasonableness, and adequacy of the proposed settlement." *Id.* (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Payment Card*, 330 F.R.D. at 29 (noting the "significant overlap" between the *Grinnell* and substantive factors). The *Grinnell* factors include:

> (1) the expense, complexity, and likely duration of the litigation; (2) the class's reaction to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing damages; (5) the risks of establishing liability; (6) the risks of maintaining the class throughout the litigation; (7) defendants' ability to withstand greater judgment; (8) the range of reasonableness of the settlement amount considering the best possible recovery; and (9) the range of reasonableness of the settlement amount[,] given the risks of litigation.

*Rosenfeld*, 2021 WL 508339, at *3 (citing *Grinnell*, 495 F.2d at 463).

## B. Procedural Factors

### 1. *Adequate Representation*

"In determining the adequacy of class representatives and counsel, courts consider 'whether (1) plaintiff[s'] interests are antagonistic to the interests of other members of the class and (2) plaintiff[s'] attorneys are qualified, experienced and able to conduct the litigation.'" *Rosenfeld*, 2021 WL 508339, at *4 (quoting *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007)); *see Payment Card*, 330 F.R.D. at 30 n.25 (explaining that "Rule 23(a)(4) case law . . . guide[s]" the Rule 23(e)(2)(A) analysis). Class representatives "'must be part of the class and possess the same interest and suffer the same injury as the [other] class members.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see also Payment Card*, 330 F.R.D. at 31 (explaining that the Due Process Clause requires adequate representation). As for class counsel, "[a] court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that . . . counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests."

*D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001); *see* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("For example, the nature and amount of discovery in this or other cases . . . may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

Here, the record illustrates that Plaintiffs' interests are aligned with those of the proposed class. Plaintiffs seek to represent "all persons and entities that purchased the publicly-traded common stock of [3D Systems] from May 6, 2020, to March 5, 2021," and Plaintiffs themselves purchased 3D Systems stock during the Class Period. (Amend. Compl., ECF No. 43, ¶ 1.) Plaintiffs also claim financial harm resulting from Defendants' alleged violations of the Exchange Act — harm that the other proposed class members are also alleged to have suffered. (*Id.* at ¶ 214.) Additionally, during the fairness hearing, Lead Counsel represented that Plaintiffs themselves "were very active in this case," "communicated regularly with" their attorneys, and, particularly, "were very involved with the approval of the [proposed] settlement." (Fairness Hearing, ECF No. 62, at 8:11–16.) Absent any indication that Plaintiffs' interests in this action "are antagonistic to the interests of other members of the class," the record demonstrates that Plaintiffs are well positioned to represent the proposed class. *Cordes*, 502 F.3d at 99.

The Court similarly finds that Plaintiffs are adequately represented by their attorneys, having previously observed that Lead Counsel has "extensive experience handling securities actions." (Mem. & Order, ECF No. 41, at 12; *see also* Rosen Law Biography, ECF No. 26-4.) The Court further notes that Lead Counsel has on several occasions been appointed class counsel for the purpose of settlement. *See, e.g., Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1910656, at *1 (S.D.N.Y. May 12, 2021) (discussing prior preliminary settlement approval); *Burns v. FalconStor Software, Inc.*, No. 10-CV-4572 (ERK) (CLP), 2013 WL 12432583, at *4 (E.D.N.Y. Oct. 9, 2013), *report*

*and recommendation adopted*, Oct. 28, 2013 ECF Order. Both the pleadings and motion papers demonstrate a thorough investigation by Lead Counsel into the underlying facts and applicable law. (*See generally* Amend. Compl., ECF No. 43; *see also* Fairness Hearing, ECF No. 62, at 8:17-9:1 (explaining that Lead Counsel "retained investigators, accounting experts, as well as damages experts" in preparing the amended complaint, and responded to Defendants' pre-motion conference letter and subsequent motion to dismiss).) Lead Counsel also participated in "an all-day [mediation] session," during which "negotiations were hard-fought" and the parties "exchang[ed] frank views over the course of many hours." (Supp. Mem., ECF No. 57, at 11–12.)

Plaintiffs acknowledge that "there was no formal discovery conducted" prior to settlement, a fact that could call into question whether Lead Counsel has adequately represented the interests of the proposed class. (Fairness Hearing, ECF No. 62, at 9:15–16.) The Court is mindful, however, that Defendants promptly moved to dismiss after Plaintiffs filed the amended complaint, thereby triggering the discovery stay mandated by the PSLRA. *See* 15 U.S.C. § 77z-1(b)(1). (*See* Letter Mot. for Pre-Mot. Conf., ECF No. 46; Mot. to Dismiss, ECF No. 50.) Given that statutory limitation, and in light of Lead Counsel's extensive pre- and post-filing efforts to investigate and substantiate the alleged violations, the Court finds that Plaintiffs are being represented by "qualified, experienced" legal counsel. *Cordes*, 502 F.3d at 99.

    2. *Arm's Length Negotiation*

"A class settlement reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation is entitled to a presumption of fairness." *Rosenfeld*, 2021 WL 508339, at *5 (quotation marks omitted). Likewise, "a court-appointed mediator's involvement in pre-certification settlement

negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato*, 236 F.3d at 85.

As to the parties' selected mediator, Jed D. Melnick, several courts in this circuit have held that Mr. Melnick's involvement has supported a finding that settlement negotiations were at arm's length. *See Gordon v. Vanda Pharm. Inc.*, No. 19-CV-1108 (FB) (LB), 2022 WL 4296092, at *4 (E.D.N.Y. Sept. 15, 2022); *Fulton Cty. Emps.' Ret. Sys. ex rel. Goldman Sachs Grp. Inc. v. Blankfein*, No. 19-CV-1562 (VSB), 2022 WL 4292894, at *3 (S.D.N.Y. Sept. 16, 2022). Additionally, as noted above, Plaintiffs represent that the mediation was an "all-day" proceeding and that "negotiations were hard-fought." (Supp. Mem., ECF No. 57, at 11–12.) Based on the record in this case, as well as the parties' representations during the Fairness Hearing, the Court perceives no "'evidence or indicia suggesting that the negotiations were collusive.'" *Gordon*, 2022 WL 4296092, at *4 (quoting *Simerlein v. Toyota Motor Corp.*, No. 17-CV-1091 (VAB), 2019 WL 1435055, at *13 (D. Conn. 2019)). The Court therefore finds that the parties' proposed settlement was the result of arm's length negotiations.

## C. Substantive Factors

### 1. *Adequate Relief*

#### a. Costs, Risks, and Delay of Trial and Appeal

The first factor in assessing whether the proposed settlement provides adequate relief for the putative class is an evaluation of the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This factor "'subsumes several *Grinnell* factors,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial" (factors 1, 4, 5, and 6). *Rosenfeld*, 2021 WL 508339, at *5 (quoting *Payment Card*, 330 F.R.D. at 36). Put simply, courts must assess whether the proposed

settlement "'results in substantial and tangible present recovery, without the attendant risk and delay of trial.'" *Id.* (quoting *Payment Card*, 330 F.R.D. at 36).

Plaintiffs have submitted the parties' proposed settlement agreement, which indicates that the settlement amount is $4 million. (*See* Settlement, ECF No. 55, § II.C.A.2.0.) Plaintiffs acknowledge that this amount "equates to approximately 1% of the total maximum potential damages calculated by Plaintiffs' expert, an estimated $414.1 million." (Supp. Mem., ECF No. 57, at 12.) They clarify, however, that the $414.1 million figure represents Plaintiffs' best-case scenario — "if everything went [their] way" up to and at trial. (Fairness Hearing, ECF No. 62, at 13:3–10.) Plaintiffs therefore argue that the $4 million settlement amount is reasonable given the costs, risks, and likely duration of litigation, which, in their view, "would take at least several more years to resolve." (Supp. Mem., ECF No. 57, at 13.) For example, Plaintiffs assert that the costs of document production, hosting fees, and depositions in this case "could run to hundreds of thousands of dollars." (*Id.*) As to the "substantial risks" of continued litigation, Plaintiffs point to Defendants' pending motion to dismiss, the overall challenges of litigating under the PSLRA, and the unique difficulties of locating witnesses in this case, "in light of the fact that [3D Systems] cut 20% of its workforce during the alleged Class Period." (*Id.* at 14–15.)

The Court agrees that the costs, risks, and likely duration of continuing to litigate this matter are significant and that a settlement would result in a tangible present recovery. This factor therefore weighs in favor of preliminary approval of the parties' proposed settlement.

  b. <u>Effectiveness of Proposed Method of Distributing Relief</u>

Second, the Court must evaluate the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R.

Civ. P. 23(e)(2)(C)(ii). "An allocation formula need only have a reasonable, rational basis" and "need not be perfect." *Payment Card*, 330 F.R.D. at 40 (quotation marks omitted). As to claims processing, the proposed method should "'deter or defeat unjustified claims' without imposing an undue demand on class members." *Rosenfeld*, 2021 WL 508339, at *6 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).

The parties have submitted a Proposed Plan of Allocation, indicating that claimants are to receive a "*pro rata* share of the Net Settlement Fund based upon" their respective losses. (Long Notice, ECF No. 55-2, at 6.) As a general matter, shares of the fund will be calculated by evaluating each claimant's estimated loss per share based on when the claimant purchased the shares, when the shares were sold, and the inflation of the stock price per share at the time of purchase and sale. (*See id.* at 7–10.) No distribution will be made to claimants "where the potential distribution amount is less than ten dollars ($10.00)." (*Id.* at 6.) Claimants will be required to report their losses by submitting a proof of claim form, which the parties' designated claims processor will review to determine each claimant's respective *pro rata* share of the settlement amount. (*See id.* at 10.) "This allocation plan appears to be rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld*, 2021 WL 508339, at *6. Likewise, it appears that the claims processing method imposes a minimal burden on claimants and will adequately filter unjustified claims to settlement funds. The Court therefore recommends finding that the proposed methods of processing claims and distributing relief are rational and fair.

### c.   Proposed Award of Attorneys' Fees

The third factor is an assessment of "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). "Courts

may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (quoting *Goldberger*, 209 F.3d at 50).

Here, Plaintiffs' counsel "intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount and recover litigation expenses in an amount not to exceed $50,000." (Supp. Mem., ECF No. 57, at 15.) "Courts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness" — particularly "in cases with funds of less than $10 million." *Rosenfeld*, 2021 WL 508339, at *6 (quotation marks omitted). Assuming that Lead Counsel's request for litigation expenses is documented and substantiated, the Court finds that the requested award for attorneys' fees will likely be found to be reasonable.[4]

    d.  <u>Other Agreements</u>

The fourth factor requires courts to consider "any agreement required to be identified under Rule 23(e)(3)," i.e., "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)(C)(iv), (3). Rule 23(e)(3) is aimed at revealing "undertakings that, although seemingly separate, may have influenced the terms of the settlement by trading away possible advantages for the class in return for advantages for others," namely, the representative plaintiffs or their attorneys. Fed. R. Civ. P. 23 advisory committee's note to 2003 amendment; *see also* David F. Herr, Annotated

---

[4] The Court notes that Lead Counsel's requested award is, of course, subject to modification at final settlement approval. *See Rosenfeld*, 2021 WL 508339, at *7. Lead Counsel should be prepared to submit contemporaneous time records to facilitate a cross-check against the lodestar. *See In re PPDAI Grp. Inc. Secs. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *14–17 (E.D.N.Y. Jan. 21, 2022); *see also Marion S. Mishkin Law Off. v. Lopalo*, 767 F.3d 144, 148–49 (2d Cir. 2014) (discussing the "strict rule" that any request for attorneys' fees must be "accompanied by contemporaneous time records" (quotation marks omitted)).

Manual for Complex Litigation § 21.631 (4th ed. 2022) ("Requiring the parties to file the complete agreement might elicit comments from class members and facilitate judicial review.").

Here, Plaintiffs have entered a "supplemental agreement" with Defendants, filed under seal as instructed during the fairness hearing. (Supp. Mem., ECF No. 57, at 16; *see also* Stipulation, ECF No. 60.) Having reviewed the parties' filing, the Court finds that Plaintiffs have accurately described the terms of the supplemental agreement in their motion for preliminary settlement approval. Specifically, the supplemental agreement provides that 3D Systems shall have "the option to terminate the Settlement" if "the number of shares of [3D Systems] common stock represented by . . . opt out[] [claimants] equals or exceeds a certain number." (Supp. Mem., ECF No. 57, at 16.) The precise terms of the supplemental agreement, including the number of shares necessary to trigger the option to terminate, are to be kept "confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement." (*Id.*) The Court notes that such agreements are "standard in securities class action settlements." *Christine Asia Co. v. Yun Ma*, No. 15-MD-2631 (CM) (SDA), 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019). "Given the specific function of this separate agreement, it does not appear to bear upon the overall fairness of the settlement agreement itself." *In re PPDAI Grp. Inc. Secs. Litig.*, No. 18-CV-6716 (TAM), 2022 WL 198491, at *13 (E.D.N.Y. Jan. 21, 2022). The Court therefore finds that the supplemental agreement is unlikely to preclude final settlement approval.

2. *Equitable Treatment*

The proposed settlement must "treat[] class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). In making this assessment, "the court may weigh 'whether the apportionment of relief among class members takes appropriate account of

differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.'" *Rosenfeld*, 2021 WL 508339 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment). As explained above, under the Proposed Plan of Allocation, the settlement funds are to be distributed on a *pro rata* basis. "In this way, the agreement appropriately and fairly accounts for . . . point[s] of differentiation among class members' claims." *Id.* at *7.

The Court further notes that the proposed settlement agreement contemplates an incentive award to Plaintiffs, paid out of the settlement fund. (*See* Settlement, ECF No. 55, ¶¶ 2.1, 6.1.) Although the exact amount for the potential incentive award is not specified in the agreement, the Long Notice provides that "Lead Counsel will ask the Court to award . . . a total case contribution award to Plaintiffs not to exceed $21,500." (Long Notice, ECF No. 55-2, at 1; *see also id.* at 12 ("Lead Counsel will apply to the Court for . . . an award to Plaintiffs not to exceed $21,500 in total.").) "Incentive awards are not uncommon in class action cases and are within the discretion of the court." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014) (quotation marks omitted). At this juncture, given the size of the settlement fund, the Court finds it unlikely that a requested award of up to $21,500 total (split five ways among Plaintiffs, for up to $5,375 each) will preclude final settlement approval, assuming that Plaintiffs demonstrate "special circumstances" for such an award.[5] *Id.*

---

[5] Special circumstances include "the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery." *Torres v. Toback, Bernstein & Reiss LLP*, No. 11-CV-1368 (NGG) (VVP), 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014) (quotation marks omitted); *see id.* ("[C]lass actions in . . . securities or antitrust litigation

3.   *Stage of Proceedings and Amount of Discovery Completed (Grinnell Factor 3)*[6]

"This [*Grinnell*] factor requires the Court to consider whether the parties have

adequate information about their claims." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F.

Supp. 2d 179, 198 (S.D.N.Y. 2012). "To approve a proposed settlement," however, "the

Court need not find that the parties have engaged in extensive discovery." *In re Austrian*

*& German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). The Court need

only ensure that the parties have sufficiently investigated the facts such that the

settlement is fair and reasonable. *See id.*

As the parties acknowledge, "there has been no formal discovery in this case."

(Supp. Mem., ECF No. 57, at 17.) Notwithstanding that, Plaintiffs assert that they

"conducted a thorough and informed investigation" of Defendants' alleged violations

prior to filing suit. (*Id.*) At the fairness hearing, Plaintiffs represented that their

investigation included a thorough review of relevant "SEC filings, analyst reports,

news," and any other "readily available" sources, in addition to hiring "accounting

experts" to assist in the preparation of the pleadings. (Fairness Hearing, ECF No. 62, at

9:21–10:4.) The Court again notes that, in light of Defendants' pending motion to

dismiss, discovery was stayed under the PSLRA. *See supra.* Under these circumstances,

and given that the well-developed allegations of the pleadings substantiate Plaintiffs'

representations as to the investigative efforts that have been undertaken in this matter,

---

generally do not carry the same risk to named plaintiffs."). The reasonableness and amount of
the incentive award may also depend on the average amount ultimately paid to similarly
situated individual claimants out of the settlement fund. *Cf. id.* at *4 (reducing proposed
incentive award based, in part, on estimated compensation to be paid to other class members).
Plaintiffs "are encouraged to be mindful of [these] concerns when" making any future request
for an incentive award. *Id.*

[6] The second *Grinnell* factor, "the class's reaction to the settlement" cannot be assessed at
this time. *Rosenfeld*, 2021 WL 508339, at *3; *see id.* at *4 n.2 (declining to assess this factor at the
preliminary approval stage).

the Court finds that Plaintiffs were adequately informed about their claims prior to reaching a proposed settlement.

    4.  *Defendants' Ability to Withstand a Greater Judgment (Grinnell Factor 7)*

"Under the *Grinnell* analysis, the [C]ourt also considers Defendants' ability to withstand a greater judgment than that provided for in the proposed settlement." *Rosenfeld*, 2021 WL 508339, at *7. Plaintiffs represent that securities filings submitted by 3D Systems in December 2022 indicate that the company has "cash [or] cash equivalents and short-term investments of 568.7 million." (Fairness Hearing, ECF No. 62, at 28:6–19.) This suggests, at least at first blush, that Defendants could withstand a greater judgment than the proposed $4 million settlement amount.

Plaintiffs further represent, however, that the company's prior filings illustrate significant losses since 2021. (*See id.* at 28:6–15 ("That was even down from the end of 2021, when they had 734 million.").) Plaintiffs also have "concerns that there are still some operational issues at" 3D Systems, such that a favorable judgment at trial "could potentially decimate the company and put them out of business." (*Id.* at 28:15–29:2.)

The Court notes that a defendant's "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Charron*, 874 F. Supp. 2d at 201 (quotation marks omitted). Accordingly, although the proposed $4 million settlement amount may be less than Defendants' theoretical capacity to pay, based on Plaintiffs' representations regarding the financial outlook of 3D Systems moving forward, the Court finds that this factor is not likely to preclude settlement approval.

    5.  *Range of Reasonableness of Settlement Fund (Grinnell Factors 8 and 9)*

The Court next considers "the range of reasonableness of the settlement fund in light of [both] the best possible recovery" and "the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see Payment Card*, 330 F.R.D. at 48 (noting that

18

these "two *Grinnell* factors . . . are often combined for the purposes of analysis"). To calculate the best possible recovery, courts "assume complete victory on both liability and damages as to all class members on every claim asserted against each defendant in the [a]ction." *Payment Card*, 330 F.R.D. at 48 (quotation marks omitted). The risks of litigation include "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart Stores*, 396 F.3d at 119.

Here, as stated above, Plaintiffs aver that the settlement amount "equates to approximately 1% of the total maximum potential damages." (Supp. Mem., ECF No. 57, at 12.) That said, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not . . . mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 455 n.2. This is because the "best possible recovery" may not be "a realistic" one. *Cagan v. Anchor Sav. Bank FSB*, No. 88-CV-3024 (CPS), 1990 WL 73423, at *13 (E.D.N.Y. May 22, 1990). Accordingly, it remains important to evaluate the settlement amount "in light of the strengths and weaknesses of plaintiffs' case." *Rodriguez v. CPI Aerostructures, Inc.*, No. 20-CV-0982 (ENV) (CLP), 2023 WL 2184496, at *16 (E.D.N.Y. Feb. 16, 2023) (quotation marks omitted). Given the risks of litigation described above, including the risk of an adverse ruling for Plaintiffs on Defendants' pending motion to dismiss, the heightened legal standards under the PSLRA, and the challenges of locating relevant witnesses, the

Court recommends finding that the parties' settlement amount falls within a reasonable range.[7]

*   *   *   *   *

On balance, the Court concludes that both the procedural and substantive factors set forth in Rule 23 and *Grinnell* suggest that the parties' proposed settlement is fair and reasonable.

## II. Likelihood of Class Certification

### A. Legal Principles

"In order to conclude that giving notice to the putative class is justified, the court must also determine that it will likely be able to certify the class for purposes of judgment on the proposal" under Rule 23(a) and (b). *Rosenfeld*, 2021 WL 508339, at *8. It is the burden of the party seeking class certification to "affirmatively demonstrate" compliance with these rules. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237 (2d Cir. 2012).

Rule 23(a) sets forth the familiar "four prerequisites for class certification": (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Rosenfeld*, 2021 WL 508339, at *8; *see* Fed. R. Civ. P. 23(a). "In addition to the explicit requirements of Rule 23(a), the class must satisfy the implied requirement of

---

[7] The Court further notes that the approximately 1% settlement amount proposed in this case, although somewhat lower than the median settlement for cases with similar estimated losses, is not dramatically so. *See* NERA Economic Consulting, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 17, https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf (last visited June 1, 2023) (estimating a 1.6% median settlement amount for similarly valued cases filed and settled from December 2011 to December 2022); *see also* Cornerstone Research, *Securities Class Action Settlements: 2022 Review and Analysis*, at 4, https://www.cornerstone.com/wp-content/uploads/2023/03/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf (last visited June 1, 2023).

20

ascertainability." *Payment Card*, 330 F.R.D. at 50 (citing *In re Petrobras Sec.*, 862 F.3d 250, 266 (2d Cir. 2017)).

Rule 23(b) "lays out three alternative 'types' of class actions that may be maintained." *Rosenfeld*, 2021 WL 508339, at *9. Relevant here, Plaintiffs seek certification under Rule 23(b)(3), which "requires both that (1) 'questions of law or fact common to class members predominate over any questions affecting only individual members,' and that (2) 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Payment Card*, 330 F.R.D. at 54 (quoting Fed. R. Civ. P. 23(b)(3)). (*See* Supp. Mem., ECF No. 57, at 6–8.)

### B. Rule 23(a) Requirements

#### 1. *Numerosity*

"The numerosity requirement mandates that the class be 'so numerous that joinder of all members is impracticable.'" *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 23(a)(1)). The "inquiry is not strictly mathematical but must take into account the context of the particular case." *Penn. Public Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 120 (2d Cir. 2014); *see id.* (listing factors to consider). As a general rule, when a class consists of forty or more members, numerosity is presumed. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).

Here, Plaintiffs assert that, "[a]lthough the exact size of the Settlement Class is not yet known . . . there are hundreds if not thousands of potential Settlement Class Members as [3D Systems] common stock publicly traded on the NYSE during the Class Period." (Supp. Mem., ECF No. 57, at 3; *see also* Fairness Hearing, ECF No. 62, at 30:24–32:5 (explaining that, of the "124 million shares outstanding" indicated in the company's 2020 annual report, Plaintiffs' damages expert estimated that "61.8 million

shares" were impacted by the alleged violations).) The Court notes that, "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia*, 269 F.R.D. at 304 (quotation marks omitted). Due to the large number of impacted shares and possible class members, numerosity can be presumed in this case. *See id.* at 309; *see also Balestra v. ATBCOIN LLC*, No. 17-CV-10001 (VSB), 2022 WL 950953, at *4 (S.D.N.Y. Mar. 29, 2022) ("[A]n estimate of thousands of class members is sufficient to satisfy the numerosity requirement." (quotation marks omitted)).

2. *Commonality*

"Commonality requires a showing that common issues of fact or law affect all class members." *In re Sadia*, 269 F.R.D. at 304 (citing Fed. R. Civ. P. 23(a)(2)). It "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" not "merely that they have all suffered a violation of the same provision of law." *Dukes*, 564 U.S. at 349–50 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "In other words, the relevant inquiry is whether a classwide proceeding is capable of 'generat[ing] common *answers* apt to drive the resolution of the litigation.'" *Jacob v. Duane Reade, Inc.*, 602 F. App'x 3, 6 (2d Cir. 2015) (alteration in original) (quoting *Dukes*, 564 U.S. at 350).

"'Common questions of law and fact are present where the alleged fraud involves material misrepresentations and omissions in documents circulated to the investing public, press releases and statements provided to the investment community and the media, and investor conference calls.'" *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 312 F.R.D. 332, 341 (S.D.N.Y. 2015) (quoting *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 156 (S.D.N.Y. 2012)). Given the nature of the allegations in this case, which

22

center on material misrepresentations and omissions in public filings, the Court concludes that the pleadings establish that the class members have suffered the same injury. As a result, commonality is present.

### 3. *Typicality*

"[T]he typicality requirement[] is satisfied by a showing that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'" *In re Deutsche Bank AG Sec. Litig.*, 328 F.R.D. 71, 80 (S.D.N.Y. 2018) (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)). It "is usually met" where "the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993). "In securities actions, in particular, typicality is 'not demanding.'" *In re Deutsche Bank*, 328 F.R.D. at 80 (quoting *Tsereteli v. Residential*, 283 F.R.D. 199, 208 (S.D.N.Y. 2012)). The Court therefore finds that Plaintiffs have met the typicality requirement in this case.

### 4. *Adequacy of Representation*

To satisfy the adequacy requirement, "[p]laintiffs must meet two standards — that 'class counsel . . . be qualified, experienced[,] and generally able to conduct the litigation,' and that 'the class members . . . not have interests that are antagonistic to one another.'" *Balestra*, 2022 WL 950953, at *4 (quoting *In re Drexel Burnham Lambert Grp.*, 960 F.2d 285, 291 (2d Cir. 1992)). Based on the Court's determinations *supra* regarding the parallel requirements under Rule 23(e)(2), the Court finds that the proposed class is adequately represented by Plaintiffs and Lead Counsel, and that the adequacy requirement will likely be found at the time of final settlement approval and judgment.

5. *Ascertainability*

"[A] class is ascertainable if it is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d at 257. The Second Circuit has observed that defining a class based on "securities purchases identified by subject matter, timing, and location" is both a "clearly objective" means of doing so and "sufficiently definite." *Id.* at 269. Accordingly, given the defined class period, and the allegations and claims at issue in this case, the proposed class appears to be sufficiently ascertainable.

## C. Rule 23(b)(3) Requirements

"Rule 23(b)(3) imposes two additional burdens on plaintiffs attempting to proceed by class action, namely, predominance and superiority." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015); *see* Fed. R. Civ. P. 23(b)(3) (requiring "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy"). These inquiries are ordinarily guided by four factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). However, in the settlement context, "'[s]ome inquiries essential to litigation class certification,' including the issue of 'manageability — how the case will or can be tried, and whether there are questions of fact or law that are capable of

common proof,'" are no longer relevant. *Rosenfeld*, 2021 WL 508339, at *10 (quoting *In re Am. Int'l Grp.*, 689 F.3d at 239). The other factors, however, "demand undiluted, even heightened, attention." *In re Am. Int'l Grp.*, 689 F.3d at 239 (quotation marks omitted).

    1. *Predominance*

    "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Again, because the prospect of settlement obviates the manageability concerns ordinarily assessed as part of this inquiry, the focus is instead whether "'the legal or factual questions that qualify each class member's case . . . can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'" *Payment Card*, 330 F.R.D. at 55 (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)); *see also Rosenfeld*, 2021 WL 508339, at *10.

    Because this action concerns claims of securities fraud, the predominance test is "readily met." *In re Am. Int'l Grp.*, 689 F.3d at 240 (quotation marks omitted). Class members' claims, i.e., that 3D Systems made misrepresentations and omissions regarding the company to the public that harmed shareholders, involve similar, if not identical, questions of law and fact. To the extent there are unique issues as to each class member, for instance, the amount of stock held by each class member, the common questions are "more substantial." *Payment Card*, 330 F.R.D. at 55 (quotation marks omitted). Accordingly, the Court finds that common questions of law and fact predominate over individual questions, and the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.*, 521 U.S. at 623.

2. *Superiority*

"Rule 23(b)(3)'s superiority requirement may be satisfied when 'the costs of bringing individual actions outweigh the expected recovery,' and when consolidation 'will achieve significant economies of time, effort and expense, and promote uniformity of decision.'" *Rosenfeld*, 2021 WL 508339, at *10 (quoting *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013)). "The superiority requirement is designed to avoid repetitious litigation and possibility of inconsistent adjudications." *Payment Card*, 330 F.R.D. at 57 (quotation marks omitted).

Here, given that Plaintiffs assert that "there are hundreds if not thousands of potential Settlement Class Members," the prospect of individual actions would certainly prove less efficient than a class-wide proceeding. (Supp. Mem., ECF No. 57, at 3.) The Court therefore finds it likely that the superiority requirement will be met.

*   *   *   *   *

For the above reasons, the Court finds that Plaintiffs have demonstrated a good likelihood of class certification. Having concluded that Plaintiffs have also demonstrated a likelihood of final settlement approval, the Court recommends granting preliminary settlement approval and finding that notice to "all class members who would be bound by the proposal" is justified. Fed. R. Civ. P. 23(e)(1)(B).

**III. Notice**

Under Rule 23, notice may be issued by either "United States mail, electronic means, or other appropriate means." Fed. R. Civ. 23(c)(2)(B). Additionally:

> The notice must clearly and concisely state in plain, easily understood language:
>
> (i) the nature of the action;
>
> (ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member so desires;

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

Ultimately, "[t]he standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores*, 396 F.3d at 113–14. Courts in this Circuit have found that a settlement notice is sufficient "when it describe[s] the terms of the settlement generally, inform[s] the class about the allocation of attorneys' fees, and provide[s] specific information regarding the date, time, and place of the final approval hearing." *Payment Card*, 330 F.R.D. at 58 (quotations omitted); *see id.* (collecting cases).

Plaintiffs have submitted several notices for the Court's review, including a long form notice and — per the Court's instruction — revised summary and postcard notices. (*See* Long Notice, ECF No. 55-2; Revised Summary Notice, ECF No. 61-1; Revised Postcard Notice, ECF No. 61-3.) The long form notice sets forth a more extensive description of the action and claims process, while the summary and postcard notices contain abbreviated versions of the same information. Having carefully reviewed the parties' filings, including the revised summary and postcard notices, the Court finds that the proposed notices contain the information required by Rule 23, set forth "in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

27

Plaintiffs have also submitted the following proposed schedule of events:

| Event | Deadline for Compliance |
|---|---|
| Creating Settlement Website | No later than 40 calendar days after the entry of the Preliminary Approval Order (¶15) |
| Emailing Links to the Long Notice and Claim Form, and/or Mailing Postcard Notice | No later than 40 calendar days after the entry of the Preliminary Approval Order (¶17) |
| Publication of the Summary Notice | No later than 40 calendar days after entry of the Preliminary Approval Order (¶16) |
| Date for Plaintiffs to file papers in support of the Settlement, the Plan, and for Application of attorneys' fees and expenses. | No later than 35 calendar days before the Settlement Hearing. (¶32) |
| Submission Deadline for Claim Forms. | No later than 28 calendar days before the Settlement Hearing (¶21(a)) |
| Submission Deadline for Requests for Exclusion | No later than 28 calendar days before the Settlement Hearing (¶23) |
| Submission Deadline for Objections | No later than 28 calendar days before the Settlement Hearing (¶29) |
| Date for Plaintiffs to file Reply Papers in Support of the Settlement, the Plan, and for Application of Attorneys' Fees and Expenses. | No later than 7 calendar days before the Settlement Hearing (¶33) |
| Dated for the Settlement Hearing | Approximately 120 days after entry of the Preliminary Approval Order |

(Supp. Mem., ECF No. 57, at 21.) Plaintiffs' proposed schedule also details that Plaintiffs

will take the following steps:

> (a) emailing a copy of the Summary Notice and links to the location of the Long Notice and Claim Form, or if no email address can be obtained, mailing the Postcard Notice, to Settlement Class Members who can be identified with reasonable effort; (b) posting the Long Notice, Claim Form, Preliminary Approval Order, and Stipulation on a website maintained by the [parties' selected] Claims Administrator; (c) upon request, mailing copies of the Long Notice and/or Claim Form; and (d) disseminating the Summary Notice over *GlobeNewswire* and in *Investor's Business Daily*.

(*Id.* at 20.)

The Court finds that Plaintiffs' proposed schedule and manner of notice comply

with Rule 23 and adequately afford due process. Notice should be ordered as proposed

by the parties, including distribution of the long form notice and revised summary and

postcard notices.

28

## IV. Appointment of Class Counsel

"When a district court certifies a class, it must appoint class counsel." *Payment Card*, 330 F.R.D. at 58. Under Rule 23(g)(1)(A), the Court "must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." The Court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). "The adequacy of counsel requirement is [ordinarily] satisfied where the class attorneys are experienced in the field or have demonstrated professional competence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case." *Mendez v. MCSS Rest. Corp.*, No. 16-CV-2746 (NGG) (RLM), 2019 WL 2504613, at *13 (E.D.N.Y. June 17, 2019) (quotation marks omitted).

As discussed above, the filings in this case show that Lead Counsel has engaged in significant investigation of the underlying claims, that they are experienced in class action securities litigation and are knowledgeable in the applicable area of law, and that they have the resources necessary to represent the class. The Court therefore recommends appointing Lead Counsel as class counsel for the purposes of settlement.

### CONCLUSION

For the foregoing reasons, the Court respectfully recommends (1) granting Plaintiffs' motion for preliminary settlement approval; (2) entering the proposed order preliminarily approving the class action settlement (*see* Proposed Order, ECF No. 56-1) ("Preliminary Approval Order"); (3) directing the parties to issue notice as proposed, consistent with the revised submissions (*see* Long Form Notice, ECF No. 55-2; Claim

Form, ECF No. 55-3; Revised Summary Notice, ECF No. 61-1; Revised Postcard Notice, ECF No. 61-3); (4) appointing The Rosen Law Firm as class counsel for purposes of settlement; and (5) scheduling a final settlement hearing for a specific date, time, and place, to be held approximately 120 days after entry of the Preliminary Approval Order.

*   *   *   *   *

Objections to this Report and Recommendation must be filed, with a courtesy copy sent to the Honorable Nicholas G. Garaufis, at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision" (quotation marks omitted)).

**SO ORDERED.**

Dated:   Brooklyn, New York
         June 5, 2023

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE